■ LEONARD E. DIMINO, Appellant-Respondent, v THERESA R. DIMINO, Respondent-Appellant. — Judgment modified and, as modified, affirmed, without costs, in accordance with the following memorandum: This appeal involves the interpretation of a separation agreement entered into by the parties in 1970. Paragraph 11 of the agreement provides that the "HUSBAND agrees that any profits realized in connection with his business or property shall also be divided equally with his WIFE." The husband contends that this provision was not intended to cover profits received from the sale of his personally held corporate stock. The wife argues paragraph 11 entitles her to share in the profits realized from *any* of the husband's business activities, including the sale of his personally held corporate stock. We find the loosely drafted agreement is reasonably susceptible of either interpretation. Therein lies the ambiguity which would have permitted the court to consider extrinsic evidence (*Steckler v Steckler,* 78 AD2d 818, 819). We agree, however, that the trial court properly declined to consider extrinsic evidence in this case. At trial, the husband was unable to remember or otherwise demonstrate that he had engaged in any pre-execution discussions with the wife dealing specifically with the parties' intentions concerning the provisions of paragraph 11. Additionally, the attorney who drafted the agreement testified that he was unable to recall the specifics of pre-execution conversations with the parties. In any event, he also indicated he had no meaningful discussion with the wife regarding the meaning of the agreement's provisions. Accordingly, any extrinsic evidence offered was, as the court noted, of no assistance in its task. The disputed paragraphs of the agreement are set forth in the dissenting memorandum which adopts the interpretation of the agreement urged by the husband. It is, however, an established principle of contract law that any ambiguity or dual meaning attributable to the words of a contract should be interpreted most strictly against the drafter (see 22 NY Jur 2d, Contracts, § 228). Here, the husband not only selected the attorney who drafted the document, but the husband provided very specific instructions on what the agreement should provide. Testimony at trial revealed the wife, unrepresented, had only slight participation in the process. Applying this principle as a guide, we decline, as did the Trial Judge, to search out an interpretation that

would support the husband's position. In interpreting a contract, the court should give "the words and phrases employed their plain meaning" (*Laba v Carey*, 29 NY2d 302, 308). The trial court correctly interpreted the term "property" to include profits received from the sale of the husband's personally held corporate stock. The term "property" has a broad everyday meaning and, contrary to the husband's position, there is nothing in the agreement to indicate that paragraph 11 was meant to apply only to the husband's noncorporate stock property. We believe the trial court was also correct in refusing to limit the husband's right to encumber his stock. While paragraph 10 provides that the husband may not "sell or transfer" his stock without the prior written consent of the wife, neither "sell" nor "transfer," given its common everyday meaning encompasses the right to encumber the stock (see, e.g., Webster's New World Dictionary [2d Coll ed, 1970]; Black's Law Dictionary [revised 4th ed, 1968]). If an encumbrance should result in an outright transfer and vitiate the wife's rights under paragraph 10, she may bring an action for breach of the agreement or breach of the covenant of good faith (*Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.*, 30 NY2d 34, cert den 409 US 875; *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87). The agreement lends itself to a coherent and reasonable interpretation which supports the wife's position. In paragraph 10, the husband agrees that the wife is to enjoy 50% of the income from even the stocks he solely owns, and further, that he will not sell or transfer any of such stock unless his wife agrees. Paragraph 10 not only gives the wife a share in the income generated by the husband's solely owned stock, but also gives her the right to consent to or to refuse a proposed transaction disposing of that income-producing property and, once she has consented to a transaction disposing of that income-producing property, she is entitled under paragraph 11 to her "equitable" share of the "profits realized" from the transaction, in exchange for surrendering her income interest. The trial court erred, however in interpreting the term "profits realized" to include only the net profits received by the husband after sale of his stock or other property, less any amount of gain that is reinvested by the husband. Realization, under either its everyday definition or its meaning for tax purposes (see, generally, *Helvering v Horst*, 311 US 112; *Loose v United States*, 74 F2d 147), occurs when an individual receives, or has control over the disposition of, the proceeds of a transaction. The husband's profits, if any, are realized upon the sale of his stock; whatever he may elect to do with those profits cannot change the fact that they already have been realized. The wife is, thus, entitled to one half of the profits made by the husband upon the sale of his corporate stock or other property during the years in question minus capital gains taxes and other expenses. We have examined the wife's other contentions and find them to be without merit. Concur — Dillon, P. J., Denman and Moule, JJ.

Hancock, Jr., and Doerr, JJ., dissent in part and vote to modify, in the following memorandum by Hancock, Jr., J., in which Doerr, J., concurs: We agree that the trial court properly declined to consider extrinsic evidence and that the intention of the parties as expressed in paragraph 11 may be ascertained from the agreement itself. In interpreting the provision in its context as part of the entire agreement and giving the words their plain meaning, however, we are compelled to reach an interpretation of paragraph 11 which differs from the majority's in two respects. First, as we read it, the term "profits realized" was intended to mean the return or income earned from the husband's capital investments in the "business or property" referred to in paragraph 11. "[P]rofits realized" would not include gains on sales of this property or of the husband's corporate stock. Second, the term "business or property" in paragraph 11 was not intended to refer to the shares in mutual funds stock and the other corporate stocks specifically mentioned in para-

graphs 7, 9 and 10. Construing profits to mean the income or return generated from the husband's investments in capital assets as distinguished from the gain on the sale of those assets is consistent with the meaning of the term as logically derived from its context and from the over-all design of the agreement. Such meaning (i.e., income or return from invested capital) is not inconsistent with the dictionary definition for "profits" when the term is used in its financial sense. (See, e.g., definition in American Heritage Dictionary of English Language [1976], p 1045 [referred to by Trial Term in its decision]: "1. An advantageous gain or return; benefit. 2. *The return received on a business undertaking after all operating expenses have been met.* 3. Often plural. a. *The return received on an investment after all charges have been paid.* b. The rate of increase in the net worth of a business enterprise in a given accounting period. c. Income received from investments or property. d. The amount received for a commodity or service in excess of the original cost"; emphasis added.) The primary purpose of the agreement, concededly a generous one fashioned to make ample provision for the wife, was, it seems evident, to insure that the wife had adequate support. Under paragraph 4 the wife agreed to accept all of the provisions of the agreement "in lieu of any and all claims and provisions for her support." It is significant that the agreement was made in 1970, long before the Equitable Distribution Law (Domestic Relations Law, § 236, part B, added L 1980, ch 281, § 9) was enacted or under serious consideration, when the typical marital separation agreement dealt not with the division of assets but with the payment of support under section 236 of the Domestic Relations Law. Thus, except for certain provisions dealing specifically with the ownership or division of assets or the division of their proceeds after sale (pertaining to the family home [par 2], the furniture and furnishings [par 3], joint savings accounts [par 6], jointly owned shares in mutual funds [par 7], and a 1969 Cadillac [par 12]), the financial provisions are calculated to further the agreement's main purpose: providing adequate income for support. This support is assured through the requirements that the husband make a $600 cash payment to his wife each month and pay for her food expenses as well as those of her brother while he resides with her; and that he pay for all expenses on the marital home, including the mortgage payments, for a life insurance premium and for insurance on his wife's automobile. In addition to these mandated cash contributions, the wife under paragraph 10 is to receive one half of all stock dividends, whether from stock held in their joint names or in the husband's name alone. It is significant that paragraph 10 also stipulates that the stock may not be sold unless the husband has first obtained the written consent of his wife. The apparent purpose of this consent provision is to make sure that the stock (whether jointly owned or individually owned by the husband) remains as a source of support for the wife through dividend income and that, in the event the husband wishes to sell some shares, the wife may, as a condition of her consent, require the husband to make equivalent provision for her support from the substituted investment or some other source. In reading the agreement, it is plain that when the parties intended to refer to the ownership of assets or to provide for a division of property or of the proceeds of property after sale, they did so in provisions referring to specific assets. Applying the maxim *"expressio unius est exclusio alterius"* (McKinney's Cons Laws of NY, Book 1, Statutes, § 240), it seems reasonable to conclude that the omission of any provision for the division of gains from the sale on corporate stock was deliberate. Indeed, as if to rule out any inference that could possibly be drawn to the contrary, the parties spelled out in paragraph 17 that "[e]xcept as herein otherwise provided, each party may dispose of his or her property in any way". It is in this context that paragraphs 9, 10 and 11 must be read

together to determine whether the phrase "profits realized in connection with his business or property" was intended to include a division of the gain or other proceeds resulting from the sale of the husband's stock. Paragraphs 9, 10 and 11 are as follows: "9. WIFE understands and agrees that all other stock in the name of HUSBAND alone, which includes Niagara Frontier Services, B-Kwik, Hy-Top Pharmacy, etc. stock shall remain said HUSBAND's sole and exclusive property. 10. HUSBAND understands and agrees to divide any and all stock dividends received equally with WIFE, whether such stock be in his name alone or in their joint names. HUSBAND further agrees not to sell or transfer any stock in his name alone or in their joint names without first having obtained the written consent of WIFE. 11. HUSBAND agrees that any profits realized in connection with his business or property shall also be divided equally with his WIFE." Paragraph 10 deals with the division of income earned from capital assets (i.e., dividends from the jointly and individually owned stock). It is reasonable, we think, to conclude that the paragraph immediately following paragraph 10, in directing that "any profits realized in connection with his business or property shall *also* be divided" (emphasis added) was *also* (i.e., as was the case with the stock in the preceding paragraph) intended to deal with income or return earned from specified assets — not with the gain or proceeds resulting from sales of those assets (see McKinney's Cons Laws of NY, Book 1, Statutes, § 239, subd b, "Rule of *ejusdem generis*"; and see, definition of "also" in American Heritage Dictionary [1976], p 37: "Besides, in addition, likewise, too"). This conclusion seems especially apt in the light of the aforesaid provisions (paragraphs 9 and 17) intended to keep the husband's property rights as the owner of assets intact except as otherwise specified. One need only imagine an application of paragraph 11 to the proceeds or gain from a particular sale to see that without a substantial rewriting to supply essential omitted provisions, such an application would be virtually impossible. Paragraph 11 states only that "any profits realized in connection with his business or property shall also be divided equally". The crucial omission, of course, is the lack of any term defining or even suggesting how profits resulting from gains on sales should be determined: i.e., what cost basis is to be used to compute the gain; whether the gain is to be the difference between the cost basis and the sale price before or after deducting the applicable capital gains tax; whether it was intended that the husband in computing the 50% of "profits realized" owed to his wife could offset gains from sales against losses occurring within the same period; and whether the provision was to be applied when the husband has reinvested the proceeds of a sale in other income-producing property. It seems most improbable that the husband (admittedly an experienced businessman) and his attorney could have intended that paragraph 11 be so read without spelling out the many details in the absence of which the provision is, as a practical matter, unworkable. Under these circumstances, it seems particularly inappropriate to seize upon the fact that the husband apparently selected the attorney and devised the scheme of the agreement as the reason for giving the agreement a strained construction contrary to what appears to be its commonsense meaning and to what an experienced businessman could reasonably have intended. (See *Atwater & Co. v Panama R.R. Co.*, 246 NY 519, 524, to the effect that the rule that a disputed clause is to be construed against the draftsman does not warrant giving that clause a " 'strict and rigid meaning * * * without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.' ") Significantly, the trial court found it necessary to perform a substantial redrafting of the paragraph to supply omitted provisions. Thus, despite the absence of any language suggesting that it should do so, it concluded that "profits realized"

meant the net gains on stock sales during a calendar year after deducting capital losses during that year (adopting, in the court's words, "the time measurement, as generally followed in standard accounting practice and as used by the great majority of laymen, as well as the Internal Revenue Service"). The court itself noted that the agreement was silent on this point. Again, without any support in the language of the agreement, Trial Term decided that "profits realized" should not include gains on sales of stock where the proceeds are reinvested. Trial Term's creation of this "reinvestment exception" was evidently prompted by the obvious unfairness of making the husband pay 50% on all gains even where the proceeds are reinvested in assets from which the wife will share in the income. Without such "reinvestment exception," if the husband must pay 50% of the gain and pay the capital gains tax in addition (as it appears he would under Trial Term's decision), he would be essentially prohibited from selling an asset and reinvesting the proceeds even when it is evident that good business judgment calls for the asset to be sold. The majority have modified the judgment by eliminating the "reinvestment exception." While we agree that Trial Term's well-intended effort to achieve fairness finds no basis in the agreement, it must be noted that the result of the modification, in addition to making the husband liable for 50% of the gains on past sales where the proceeds were reinvested, will inevitably be to deter any future sales and reinvestments of stock with the wife's consent under paragraph 10. It is significant also, we think, that the majority have found it necessary to modify Trial Term's judgment in an additional respect: by supplying another provision, which Trial Term did not supply (and which also finds no support in the wording of the agreement), i.e., that profits during the years in question include gains on sales "minus capital gains taxes and other expenses." One cannot dispute that the added qualification makes the majority's interpretation of paragraph 11 fairer. The point is that if paragraph 11 had been intended to cover gains on sales of stock or other property, it would not have been necessary to add this obviously essential provision on taxes and the other provisions created by Trial Term in an effort to make paragraph 11 workable. The conclusion compelled from the omission of this crucial term, we submit, is that paragraph 11 was never so intended. As stated, the principal aim of the agreement was to assure adequate support for the wife and not (with specific exceptions) to make provision for a division of assets. Consistent with this purpose, the parties, in paragraph 9, expressly stipulated that the husband's stock shall remain his "sole and exclusive property." This "sole and exclusive ownership" is subject to two defined burdens or limitations: (1) the husband's agreement in paragraph 10 to divide half of the dividends received with his wife, and (2) his agreement not to sell the stock without her written consent. To read paragraph 11 as giving the wife a one-half interest in the gain on the sales of the stock further diminishes the husband's property rights as the beneficial owner in contravention of the direction in paragraph 9 that the stock remain his "sole and exclusive property" and the proviso in paragraph 17 that "[e]xcept as herein otherwise provided" (emphasis added), he "may dispose of his * * * property in any way". Nor, in our opinion, is it a logical construction of paragraph 11 to read "business or property" as including the shares of mutual funds stock and corporate stock which are the specific subject matter of paragraphs 7, 9 and 10. It has been seen that when the parties intended to make provision for the division of proceeds or for the sharing of income from particular assets, they took pains to do so by specific references to the assets in question (see references to mutual funds stock and shares of stock in identified corporations in paragraphs 7, 9 and 10). If they had intended, as the majority would have it, to make "property" as used in paragraph 11 a catchall term to

include everything the husband owned, these specific references would have been, in large measure, superfluous. It is an established canon of construction that meaning and effect shall be given to every part of a contract (see *Corhill Corp. v S. D. Plants, Inc.,* 9 NY2d 595, 599; 22 NY Jur 2d, Contracts, § 221). Once again the word "also" in the phrase "profits realized in connection with his business or property shall *also* be divided" (emphasis added) seems clearly to signify that the profits from the property being divided in paragraph 11 are in addition to, and, therefore, necessarily distinct from, the profits (i.e., dividends) which are divided in paragraph 10. What has been said concerning the over-all scheme of the agreement as being devised to assure adequate income for the wife's support but to preserve intact (with limited exceptions) the individual property rights of the parties, applies here as well. A broad reading of "property" in paragraph 11 to give the wife a 50% interest in the gain on any sale of the husband's individually owned property including his corporate stock would be contrary to that scheme. We would modify the judgment by vacating paragraphs 4 and 5 in their entirety and substituting therefore declarations consistent with this memorandum. We would affirm so much of paragraph 14 as denies the wife any judgment with respect to the proceeds of the stock sales mentioned therein for the reason that the wife has no claim to such proceeds under the agreement. We see no reason to disturb the trial court's exercise of discretion in ordering paragraphs 6 and 13 and would agree that those provisions and the rest of the judgment should be affirmed. (Appeals from judgment of Supreme Court, Niagara County, Gossel, J. — divorce.) Present — Dillon, P. J., Hancock, Jr., Doerr, Denman and Moule, JJ.