■ George H. Tanner, Jr., Appellant, v Marie C. Tanner, Respondent. — Appeal from a judgment of the Supreme Court granting a divorce to both parties, entered March 5, 1984 in Albany County, upon a decision of the court at Trial Term (Pennock, J.), without a jury.

In this divorce action commenced in July, 1982, the parties stipulated to the grant of a dual divorce on the grounds of cruel and inhuman treatment (Domestic Relations Law, § 170, subd [1]). It was also agreed that plaintiff would have custody of the parties' 15-year-old son and defendant would have custody of their 10-year-old daughter. The trial court determined the distribution of the parties' income and property. In its decision, the trial court, *inter alia,* (1) made a distributive award of title and ownership of the marital residence to defendant in lieu of a share in plaintiff's vested pension rights; (2) ordered plaintiff to pay $250 per week maintenance to defendant; (3) ordered plaintiff to pay defendant $50 per week child support for the daughter; and (4) ordered that plaintiff pay $2,500 in counsel fees. Plaintiff appeals from the divorce judgment alleging error and abuse of discretion by the trial court in its application of the Equitable Distribution Law (Domestic Relations Law, § 236, part B).

The parties were married in June, 1967. Neither brought significant assets to the marriage. Defendant was debt-free, while plaintiff had a $67 per month student loan obligation with six years of payments remaining. Almost immediately following the marriage, plaintiff secured employment as an engineer with the State Department of Transportation. His salary for the first two years was in the form of an annual stipend of $3,200 while he attended a work-study program leading to a master's degree. During that period, defendant worked full time as a registered nurse earning about $7,400 annually, a situation that continued until the birth of the parties' first child in October, 1969. Defendant then worked on a part-time basis until January, 1974, at which time she resumed full-time employment. We conclude that the marital property should be divided equally.

At the time of trial in May, 1983, plaintiff was 37 years old and was employed by the State at an annual salary of $41,679, which yielded a net biweekly income of $866.28. Defendant, also

37 years old, was employed full time and received $16,786 annually, which yielded a net biweekly income of $499.86. Until plaintiff moved from the marital residence in November, 1981, they shared the home which they purchased in 1969 with jointly owned funds and which was valued at $58,000 at trial. The parties agreed that the home had an equity value of $38,000 as of May, 1983. The only other major asset of the parties was plaintiff's vested State pension rights, which would not mature until he attained age 55 in June, 2000.

The trial court's decision to award defendant title to the marital residence in lieu of a pro rata share of the current value of plaintiff's vested pension rights is the focal point of this appeal. Under the provisions of the Equitable Distribution Law, trial courts are empowered to award legal title of the marital residence exclusively to one spouse (*Matter of Ward v Ward,* 94 AD2d 908, 909). Trial courts are also granted discretion to make distributive awards in lieu of an equitable distribution of a particular asset where such an award would facilitate the distribution of marital property (Domestic Relations Law, § 236, part B, subd 5, par e). Here, however, plaintiff's pension rights are not matured. Thus, any true realization of his investment in the pension fund will elude him until the year 2000. By contrast, defendant would have immediate access to the $38,000 equity in the marital residence, either by means of sale or an equity loan. Courts should avoid a method of marital property distribution which permits one spouse immediate realization of equity in the assets awarded, while relegating the other spouse to a relatively long and uncertain wait for the same enjoyment (see Domestic Relations Law, § 236, part B, subd 5, par d, cl [7]; *Majauskas v Majauskas,* 110 Misc 2d 323, 326, mod on other grounds 94 AD2d 494, affd as mod 61 NY2d 481).

Defendant's expert, a certified public accountant, testified as to the value of plaintiff's vested pension rights. He testified to three different scenarios, two of which calculated plaintiff's benefit on the assumption he would continue to work until age 55. The figure used by the trial court ($65,927) was computed by defendant's expert by projecting plaintiff's continued work until age 55 with an annual 5% increase in salary. The total value arrived at was then adjusted to current value by calculating the amount necessary to invest as of July, 1982 which would yield the projected amount, assuming a 10% annual return on the investment.

That calculation, however, may not be used in determining the current value of plaintiff's vested pension rights as of July 9, 1982, the date this action was commenced. It is only the value of

plaintiff's pension attributable to his "employment time after marriage and before commencement of a matrimonial action" that may be used in calculating the current marital property value of the unmatured pension rights (*Majauskas v Majauskas,* 61 NY2d 481, 491). Defendant's expert testified that plaintiff's pension rights calculated on that basis would produce an annual income of $8,457. He calculated plaintiff's life expectancy as of the date the pension rights matured (i.e., age 55) as 21.7 years. Thus, the total lifetime value of plaintiff's pension was projected to be $183,517. The expert calculated that $32,796 invested, with an annual interest rate of 10% from July, 1982 would yield that total. We find that this calculation more accurately determines the current marital property value of plaintiff's vested pension rights. Therefore, we determine defendant's equitable share of that particular marital asset to be $16,398.

Ordinarily, the sale of the marital residence should be ordered at the time of the divorce judgment, absent extenuating circumstances (*Wobser v Wobser,* 91 AD2d 826, 827). Here, smaller living quarters can adequately accommodate each party and one child, rather than the marital residence which was formerly a home for four persons (see *De Liso v De Liso,* 65 AD2d 778). Plaintiff testified that he found adequate housing for himself and his teenage son in an apartment for which he paid a rental of $345 per month. The marital residence mortgage payment is $375 per month, plus the additional cost of insurance and maintenance expenses. In view of the facts that (1) both parties are similarly situated with each having custody of one child; (2) maintenance payments by plaintiff to defendant are available as a means of equalizing buying power; and (3) the only major marital asset currently available to the parties is the equity in the marital residence, the residence should be sold and the net proceeds equally divided between the parties after deduction is made for payment of the mortgage and the expenses of the sale (see *Dimino v Dimino,* 91 AD2d 1185, 1186, app dsmd 59 NY2d 968).

We have considered the present financial and probable future circumstances of the parties, including their respective income tax liabilities (see Domestic Relations Law, § 236, part B, subd 5, pars c, d; subd 6, par a, cl [7]). We have also considered the other factors listed in part B of section 236 of the Domestic Relations Law and find them irrelevant. Accordingly, we determine it to be equitable, given our modification of the judgment, that plaintiff pay defendant her $16,398 share of the value of the pension rights within three years of the entry of the order based on this decision. Interest shall be paid on that amount to

defendant by plaintiff from the date of commencement of the action at the rate provided for by statute as the legal rate to be charged on money judgments in this State (CPLR 5004).

The trial court awarded defendant $250 per week maintenance and additionally required plaintiff to pay defendant $50 per week support for the parties' daughter. This would give defendant a net annual income of $28,596 available to meet her expenses. Plaintiff would be left with a postjudgment net income of only $6,916 on which to meet the needs of himself and his son per year. It is readily apparent that the result is inequitable to the parties, and to the children, who enjoyed the same standard of living while their parents were married. We may not permit such an inequity to be visited upon a child where other alternatives exist (see *Matter of Brescia v Fitts,* 56 NY2d 132, 141).

Finally, as to the trial court's award of $2,500 in counsel fees to defendant, we must reverse. The award of counsel fees should be based on need on a gender-neutral basis (*Steinman v Steinman,* 87 AD2d 649; see Domestic Relations Law, § 237, subd [a]). Our modification of the divorce judgment leaves the parties very similarly situated financially, essentially equally able to pay their respective attorney fees, and thus any financial necessity for an award of counsel fees is obviated (see *Patron v Patron,* 53 AD2d 822, app dsmd 40 NY2d 582).

Accordingly, given the circumstances of the instant case, we determine in our discretion (see *Majauskas v Majauskas,* 61 NY2d 481, 493-494, *supra*) that the equitable arrangement for the distribution of the parties' income and assets is as follows: (1) that the marital residence be sold, with each party sharing equally in the net proceeds realized after any expenses in connection with the sale; (2) that plaintiff pay to defendant child support of the parties' daughter in the amount of $50 per week; (3) that plaintiff pay to defendant maintenance in the sum of $50 per week, said maintenance to terminate upon defendant's remarriage as provided by statute (Domestic Relations Law, § 236, part B, subd 1, par a); (4) that plaintiff pay to defendant the amount of $16,398, plus any applicable statutory interest, within three years from entry of the order based on this decision; and (5) that defendant's request for counsel fees be denied.

Judgment modified, on the facts, without costs, by directing that the parties' marital residence be sold, with each party sharing equally in the net proceeds realized after any expenses in connection therewith; ordering plaintiff to pay defendant maintenance payments of $50 per week until her remarriage and the amount of $16,398, plus an applicable statutory interest, within three years of entry of the order based hereon; and

denying defendant's request for counsel fees; and, as so modified, affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.