BERT PULITZER, Appellant-Respondent, v CORINNE PULITZER, Respondent-Appellant.

First Department, January 12, 1988

**APPEARANCES OF COUNSEL**

*Albert Kostrinsky* for appellant-respondent.

*Michael Konopka* for respondent-appellant.

**OPINION OF THE COURT**

ASCH, J.

The parties were married in December 1974 and have one

child, Justin, born in September 1978, now nine years old. The plaintiff husband is now 43 and defendant wife 39.

At the time of their marriage, defendant was a New York City high school teacher and plaintiff headed the Bert Pulitzer Division of Consolidated Goods, Inc., a design and manufacturing company which he had previously owned but had sold. In February 1975, plaintiff repurchased the business and, at that time, the wife left her teaching job and worked for the company. In short order, she became head of the ladies' division of the company. The parties traveled extensively and dined out lavishly, but on company business and at company expense. Although living in a two-bedroom, rent-stabilized apartment, that apartment was on Park Avenue, and they had a housekeeper.

After business reversals, Rapid American Botany Shirt Company purchased the company and employed both parties in their former positions. The wife left that firm and began to work for Lynwood Classics in August 1979 at a salary of $55,000 per year. The husband, in November of 1980, followed suit. He left Rapid American and ultimately received $50,000 and a BMW automobile in settlement of claims against his former employer. He thereupon set up his present corporation, XMI Corp., a design consulting business. Although the wife earned $62,000 in 1981, she stopped her employment in April 1982 and had not returned to work through the time of trial. The husband's salary in 1984 from his corporation was $155,000 per year, with the court recognizing an additional $50,000 in life-style benefits paid by the corporation (which the court found covered the husband's obligations to his first wife and the children from his first marriage).

During the course of the marriage, the parties had purchased, in their joint names, a summer home in Sag Harbor for $110,000, obtaining a purchase-money mortgage of $75,000 from the builder and borrowing $30,000 from the wife's parents. The parties had also purchased a tax shelter, known as El Paso, in joint names.

Approximately nine months after the commencement of this action, in the winter of 1983, an amended plan for cooperative conversion of the parties' rental apartment in Manhattan was filed. The apartment became available for $74,910. The wife did not advise the husband of such opportunity but executed the subscription agreement on her own and assigned the rights to her parents on March 15, 1983. Her parents pur-

chased the shares allocated to the apartment with their own funds. The husband commenced a separate action to obtain an interest in the apartment against the wife, her parents and the cooperative corporation.

After an 11-day trial in March 1985, Trial Term issued a decision in August 1985, followed by two supplemental decisions necessitated by the parties' inability to resolve minor differences, and thereafter by a comprehensive May 1986 findings of fact and conclusions of law. Besides granting the wife a divorce on grounds of the husband's cruel and inhuman treatment and awarding the wife custody of the child, with liberal visitation to the husband, it found the husband's earning power to be three times greater than the wife's. Accordingly, the court stated its intent to use that ratio in apportioning responsibilities where appropriate.

It found that the wife, not having worked for three years, was not at peak efficiency or experience to undertake high level employment, and thus entitled to rehabilitative maintenance of $27,400 per year for three years, payable at $527 per week. The court also found that the child's expenses, exclusive of private school tuition, summer camp expenses and unreimbursed medical and dental expenses, were $19,000, and that the husband should pay child support of $15,600 per year, payable in weekly installments of $300 per week, plus the entire cost of private school tuition, summer camp expenses and unreimbursed medical and dental expenses.

The court evaluated the husband's business on a "value to owner" basis and calculated this value by multiplying the monthly billings of $27,000 by 12 and then subtracting the husband's base salary of $150,000 (erroneously reaching a result of $175,000). The court found the wife to be entitled to 25% of such value. The husband's settlement with Rapid American for the $50,000 payment and a BMW (which was directed to be sold) was to be divided equally by the parties. The Sag Harbor summer home, found to be worth $185,000 less loans attributable to it of $100,000, was to be sold and the proceeds to be subject to a lien for other amounts which one party might owe the other. The El Paso tax shelter was found to be a marital asset, but of constantly changing value due to its diminishing tax benefits over time, and it was therefore ignored by the court. The cooperative apartment was found to be a marital asset and its proper value fixed as of the time of its dissipation from the marital estate in March 1983, when the wife assigned the right to purchase it to her parents. This

was found to be $366,500, from which the $74,690 paid by the wife's parents was deducted, with the husband being credited for one half the balance, or $146,005. Two Marinsky bronze sculptures were found not to be the property of either party, but rather that of the Bert Pulitzer Company.

■ The award of $27,400 per year rehabilitative maintenance was not excessive. It is to continue for only three years, allowing the wife time to restore her earning power to prior levels. The $300 per week child support, exclusive of private school tuition, summer camp and unreimbursed medical and dental expenses, even taking into account that her obligation is only three quarters of such support, is also not excessive. It represents less than 10% of the husband's annual salary. Further, sufficient special circumstances exist to require the husband to contribute to private school tuition herein. The parties are highly educated and they have the financial ability to provide the necessary funds *(Kaplan v Wallshein,* 57 AD2d 828). However, Trial Term overlooked the 3 to 1 ratio when it required the husband to pay all such tuition, as well as all summer camp expenses and all unreimbursed medical and dental expenses, and we therefore modify to limit the husband's obligations to three quarters of such expenses.

Plaintiff's contention that it was improper to order him to pay medical and dental expenses, inasmuch as they are of an open-ended nature, citing *Armando v Armando* (114 AD2d 875) and 22 NYCRR 699.9 (f) (6), is without merit. That precedent was based on a rule of the Appellate Division, Second Department, which had no counterpart in this Department and which itself has been rescinded. As noted, however, the husband's obligation is limited to three quarters of such expenses.

■ The cooperative apartment in Manhattan was not marital property since neither the wife nor the husband held any valuable property rights with respect to the apartment (not even the right to purchase at an insiders' price), and the time to exercise such rights under the first two cooperative conversion plans had expired by June 1982, before this action was brought. Domestic Relations Law § 236 (B) (1) (c) defines marital property as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held", therefore excluding any property rights to the cooperative. By the same token, the cooperative apartment does not fit within the

definition of "separate property", in Domestic Relations Law § 236 (B) (1) (d).

Domestic Relations Law § 234 (which predated equitable distribution), permitting the court to "determine any question as to the title to property arising between the parties", and to "make such direction, between the parties, concerning the possession of property, as in the court's discretion justice requires", did not give Trial Term authority to reach the result it did. This provision cannot apply in the situation herein, where title is held by neither party but rather by the wife's parents, and where the wife's possession of the apartment is not disputed by the husband.

What the husband sought and Trial Term awarded was a distributive award of the value of the cooperative apartment without affecting its title or possession, a remedy obtainable solely under Domestic Relations Law § 236 (B), which by its own terms is inapplicable to this asset. Therefore, we modify to vacate those portions of the judgment crediting plaintiff husband with 50% of the value of the apartment, amounting to $146,005, and relegate him to his separate action with respect to the alleged misappropriation by the wife, in March 1983, of a jointly held right to purchase the apartment at the insiders' price (see, Lavington v Edgell, 127 AD2d 155).

■ The wife's contention that Trial Term should have assessed the value of the El Paso tax shelter against the husband is without merit. She presents no method for such evaluation. In addition, such evaluation has now been further complicated by the adoption of the Tax Reform Act of 1986, which has the effect of diminishing the value of the paper losses the asset spins off, and thus, of the asset itself. In any event, the tax shelter asset is jointly owned and the wife may also utilize whatever tax advantages remain.

■ Trial Term erred in deducting the husband's salary from the yearly corporate billings in fixing the value of the corporation, since such deduction is not part of the "value to owner" method ostensibly adopted by the court. Its calculation of the deduction was also in error. However, it appears clear that Trial Term adopted the "value to owner" methodology only because three other methods of valuation, i.e., book value, assets over liability, and price-earnings ratio, fixed an insufficient value of between $11,000 and $37,500. We find that the final $43,750 figure fixed by Trial Term was a fair distributive share of the business where, as here, the business is and

always has been predominantly dependent upon the husband's efforts and reputation.

As the volume of matrimonial cases before the court continues to grow, it becomes increasingly apparent that accounting and social work skills are as important, at least, as the black letter law, in resolving the disputes. We have examined the remaining contentions by the parties and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Kenneth L. Shorter, J.), entered May 16, 1986, which, *inter alia,* awarded defendant wife maintenance for three years payable at $527 per week, fixed plaintiff husband's child support obligation at the rate of $300 per week, plus private school tuition, summer camp expenses and unreimbursed medical and dental expenses, and credited plaintiff with $146,-005 representing one half the value of a cooperative apartment as of March 1983, should be modified, on the law and facts, to the extent of reducing plaintiff's obligation for private school tuition, summer camp expenses and unreimbursed medical and dental expenses under decretal paragraph 7 to three quarters of such costs, and vacating the credit to plaintiff for 50% of the value of the cooperative apartment under decretal paragraph 23 (a) and proportionally changing the calculation of total credits due the parties under decretal paragraph 23 (d), without prejudice to plaintiff's claims as to the cooperative apartment made in a separate action, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., SANDLER, CARRO and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 16, 1986, unanimously modified, on the law and facts, to the extent of reducing plaintiff's obligation for private school tuition, summer camp expenses and unreimbursed medical and dental expenses under decretal paragraph 7 to three quarters of such costs, and vacating the credit to plaintiff for 50% of the value of the cooperative apartment under decretal paragraph 23 (a) and proportionally changing the calculation of total credits due the parties under decretal paragraph 23 (d), without prejudice to plaintiff's claims as to the cooperative apartment made in a separate action, and otherwise affirmed, without costs and without disbursements.