■ JUDITH A. CUTSON, Respondent, v JOSEPH CUTSON, Appellant.—Weiss, J. Appeal from a judgment of the Supreme Court (Lynn, J.H.O.) granting, inter alia, plaintiff a divorce, entered January 23, 1989 in Ulster County, upon a decision of the court, without a jury.

Following trial, the marriage of the parties was dissolved on the ground of cruelty. Awards of custody, child support, visitation and equitable distribution of the marital assets were included in the judgment. On this appeal, defendant has limited his challenges to the sufficiency of the evidence which supported the finding of cruel and inhuman treatment and to the award of equitable distribution.

A brief recitation of the facts is required. On August 23, 1975, the parties were married, each for the second time, and two sons, presently ages nine and seven, were born of the marriage. When this suit was commenced 12 years into the marriage, plaintiff was 39 years old and a college graduate earning approximately $53,000 annually while defendant, 53 years old and with only limited posthigh school training, was earning approximately $30,000 a year. In fact plaintiff had always earned more than defendant throughout the marriage. In 1981 plaintiff obtained employment with IBM, causing the family to move from New Jersey to Ulster County where they built a house on a lot given to them by plaintiff's parents and which was adjacent to their home. Ultimately, defendant found a job in this State which required him to drive 61 miles each way, every day. He must pay $20 weekly alimony and $65 weekly support for a handicapped child of his previous marriage. Plaintiff claims to have been diagnosed as having multiple sclerosis, which is in remission.

Defendant initially contends that plaintiff's proof on the issue of his alleged maltreatment was not corroborated and did not rise to the level of cruel and inhuman treatment. We disagree. Acts of cruel and inhuman treatment constituting grounds for divorce do not require corroboration (Rispoli v Rispoli, 131 AD2d 556, lv denied 70 NY2d 609; D'Amato v D'Amato, 96 AD2d 849). The trial court, as a fact finder, has the advantage of observing the witnesses and as its findings based upon an assessment of the credibility of conflicting testimony about events in issue should not be disturbed upon review (Northern Westchester Professional Park Assocs. v Town of Bedford, 60 NY2d 492, 499; Peterson v Peterson, 133 AD2d 448, 449). Since much of the alleged cruelty occurred in private, plaintiff's testimony, by itself, may be, and in this instance was, sufficient to provide grounds for the divorce (see, Rispoli v Rispoli, supra).

Turning to the award of equitable distribution of marital property, we initially note that plaintiff's affliction with multiple sclerosis weighed heavily in her favor with respect to Supreme Court's awards of equitable distribution. In his brief, defendant attacks plaintiff's failure to offer medical evidence that she has the disease other than her own hearsay testimony in which she testified that the disease was suspected in 1985 and diagnosed in 1987. However, defendant failed to challenge, in any form, plaintiff's assertions that she was afflicted. Since plaintiff's proof of her illness remained unchallenged, it was not error for Supreme Court to find that she

had the disease. Although plaintiff testified that she was in remission, the record remains devoid of any proof, medical or otherwise, of the severity of her sickness, her prognosis and future prospects, particularly with regard to employability. The record does establish that plaintiff's employment provides health and disability income coverages, and that her earnings exceed the maximum Social Security withholding allowances qualifying her for disability benefits in the event of her total disability.

In determining equitable distribution, the probable future financial circumstances of each party must be considered as a statutory factor (Domestic Relations Law § 236 [B] [5] [d] [8]). We find nothing in the record to support the awards to plaintiff of her IRA account ($11,000), her tax-deferred savings plan ($20,500) and her IBM pension, each in their entirety. We note that Supreme Court did refer to its uncertainty about the income tax impact resulting from withdrawal or division of these accounts. However, the court failed to consider the protection afforded the litigants by a qualified domestic relations order (26 USC § 401 [a] [13]) which would avoid current tax consequences resulting from a division. Supreme Court declined to give defendant any interest in plaintiff's pension because of a large and immediate perceived tax consequence and the "precarious state of her health" and "her much more pessimistic future outlook and prospects". Again we note that proof of neither predicate was before the court. Since the court clearly stated that but for these factors, the equitable distribution would have been equal and since no consideration was given to defendant's age of 54 and the limited time available for him to prepare for retirement, it is necessary to remit this case to Supreme Court for further proof and findings on these issues.

We further find that Supreme Court neglected to find that any portion of a New Jersey bank account was defendant's separate property. Two years after the parties were married, defendant lost the government position which he had held for 12 years and he was given his accumulated pension benefits of approximately $9,000, which he deposited into a joint savings account with plaintiff. Undisturbed, it grew to approximately $20,500 until the month preceding commencement of this action when plaintiff, without notice to defendant, broke the certificate of deposit and took approximately $12,850, leaving $7,500 in the account. Since only ⅙ of the initial $9,000 can be classified as marital property, plaintiff in effect misappropriated over $10,000 of defendant's separate property to her-

self. It was therefore error to permit plaintiff to retain funds which were by statute defendant's separate property *(see,* Domestic Relations Law § 236 [B] [1] [d] [1], [3]) and not require plaintiff to account for the use of the marital portion of those funds.

We next find that distribution of the automobiles was not satisfactorily explained. While each party retained the car held in their own name, plaintiff discharged a loan on her car using funds that were primarily defendant's separate property while he was ordered to reimburse her in full with interest at 9% for all payments on his car loan which actually was a marital debt being partially paid with marital funds. As a result, plaintiff will have a fully paid valuable auto while defendant's car will be heavily encumbered. In addition, defendant must pay a substantial, but yet undetermined, amount of money to plaintiff. Since Supreme Court failed to state the factors underlying departure from its stated finding that an equal division of marital property was appropriate, it is necessary to remit for further proof on this issue.

Finally, Supreme Court held the family residence to be marital property and gave plaintiff the option to either immediately buy defendant's interest by paying one half of the equity value minus adjustments to him, or permitting her to retain exclusive possession until the youngest child reaches the age of 18, or if in school, until the completion of his education including graduate school. The home would then be sold, the proceeds divided equally after plaintiff is reimbursed for her major repair expenses and mortgage principal payments, both with 9% interest. Plaintiff chose the second option. Ordinarily, trial courts should avoid a method of property distribution which permits one party immediate enjoyment while relegating to the other spouse a relatively long and uncertain wait *(see, Tanner v Tanner,* 107 AD2d 980, 981).[1] Although support may be found in the record to permit plaintiff to remain in the home while she is caring for two minor children[2] *(see, Beach v Beach,* 158 AD2d 848; *Pacillo v Pacillo,* 155 AD2d 736), there is absolutely no basis for exclusive possession to continue once the youngest child graduates from high school, absent proof of extraordinary circumstances, which are lacking here *(see, Tanner v Tanner, supra,* at 982).

---

1. It is possible that defendant may be 71 years old before he receives his share.

2. Supreme Court made no finding that any particular housing arrangement was preferred or appropriate, but rather left the continued use of the marital home by plaintiff to her unlimited discretion.

Moreover, Supreme Court, concluding that this arrangement subsidized plaintiff's housing costs, considered incorrect figures for her available take-home pay. The court used outdated, preaction data which included deductions of $49 in voluntary stock purchases, $78 in a voluntary tax-deferred savings plan, and $125 in credit union deposits, all deducted prior to arriving at a $400 net weekly paycheck. Nor did the court consider plaintiff's subsequent pay raises. Accordingly, remittal for reconsideration and possible modification is required.

Since any modification relative to one of the items discussed may affect the disposition of other property, the entire property distribution must be remitted to Supreme Court for further proceedings and proof consistent with this decision.

Judgment modified, on the law, without costs, by vacating those provisions relating to resolution of separate and marital property issues; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.