■ JOHN J. URTIS, SR., Respondent, v ADRIANA C. URTIS, Appellant.—Judgment unanimously modified on the law and as modified affirmed without costs in accordance with the following Memorandum: Defendant wife appeals from a judgment of Supreme Court, which, among other things, granted the parties mutual divorces on the ground of cruel and inhuman treatment, equitably distributed the parties' marital property on a 50-50 basis, ordered plaintiff husband to pay child support of $240 per month, retroactive to December 1, 1990, and denied defendant's application for attorney's fees, costs and disbursements. For the reasons set forth herein, we modify that judgment by reversing so much of the judgment as granted a divorce to plaintiff and by ordering that plaintiff be obligated to pay child support in the amount of $482 per

month, retroactive to April 4, 1986, with appropriate credit given for support payments in the amount of $240 per month that he had made initially on a voluntary basis and later pursuant to court order.

To be entitled to a divorce on the ground of cruel and inhuman treatment, plaintiff was required to establish serious misconduct on the part of defendant such that his physical or mental well being was endangered and continued cohabitation with defendant was unsafe or improper *(see,* Domestic Relations Law § 170 [1]; *Brady v Brady,* 64 NY2d 339, 343; *Stagliano v Stagliano,* 132 AD2d 975, 976; *see also, Hessen v Hessen,* 33 NY2d 406, 410; *Marciano v Marciano,* 161 AD2d 1163, *lv denied* 76 NY2d 707; *Green v Green,* 127 AD2d 983). Because of the long duration of the parties' marriage, 28 years, plaintiff bore a heavy burden of establishing defendant's cruel and inhuman treatment *(see, Brady v Brady, supra,* at 344-345; *Hessen v Hessen, supra,* at 411). Plaintiff did not meet that burden. The "record establishes, at best, only strained relations and incompatibility which are insufficient to sustain a divorce based on cruel and inhuman treatment" *(Green v Green, supra,* at 983; *see also, Brady v Brady, supra; Marciano v Marciano, supra).*

At the time that issue was joined in this action, on or about April 4, 1986, the parties had one minor child, who resided with defendant. In her pleadings, defendant asked for child support. Supreme Court ordered that plaintiff pay $240 per month in child support from December 1, 1990. The record disclosed that plaintiff had been making monthly support payments of $240 since February 1989. Before February 1989, plaintiff had been paying defendant $67 per week to cover the mortgage and insurance payments on the marital residence. The court's support order was made without consideration of the Child Support Standards Act (CSSA; Domestic Relations Law § 240 [1-b]), which became effective during the pendency of this action. That was error *(see, Meyer v Meyer,* 173 AD2d 1021, 1022; *Cleary v Cleary,* 171 AD2d 1076, 1077; *Gelb v Brown,* 163 AD2d 189, 191). The record, however, is complete and permits us to apply the CSSA and to determine support.

The parties had one minor child at the time of the dissolution of their marriage. Thus, their basic child support obligation was 17% of their combined income *(see,* Domestic Relations Law § 240 [1-b] [b] [1], [3] [i]). The court found and the record established that defendant's income was $40,000 per year and that plaintiff's income was $36,800 per year. Applying the CSSA, the parties had a combined income for purposes of that statute of $71,032.32 *(see,* Domestic Relations Law

§ 240 [1-b] [b] [4], [5]). The basic child support obligation, therefore, was $71,032.32 multiplied by 17%, or $12,075.49. Plaintiff's pro rata share of that obligation was $5,784.16 per year or $482 per month (see, Domestic Relations Law § 240 [1-b] [c] [2]). There are no special circumstances in this case that indicate that it is unfair or unjust to obligate plaintiff to pay the basic child support obligation (see, Domestic Relations Law § 240 [1-b] [c], [g]). Thus, plaintiff should be responsible for his pro rata share of the basic child support obligation, retroactive to April 4, 1986 and until his child is emancipated, with appropriate credit to him for payments already made (see, Gelb v Brown, supra, at 192; Berge v Berge, 159 AD2d 960, 961; Petrie v Petrie, 124 AD2d 449, 451, rearg denied App Div, 3d Dept, Feb. 9, 1987, lv dismissed 69 NY2d 1038; see also, Domestic Relations Law § 236 [B] [7] [a]; Cleary v Cleary, supra).

In making an equitable distribution of the marital assets, the court failed to adhere to the requirements of Domestic Relations Law § 236 (B) (5) (g). Nonetheless, the record supports the court's findings, and its conclusions reflect consideration of appropriate factors. We exercise our discretion to set forth the factors we consider determinative and our reasons for affirming the equitable distribution made by the trial court (see, O'Brien v O'Brien, 66 NY2d 576, 589; Reck v Reck, 149 AD2d 934; Jablonski v Jablonski, 103 AD2d 1006).

As found by the trial court, the record established that: the only separate property held by either party was plaintiff's $6,000, used as a down payment on the marital residence; the parties were married for 28 years before plaintiff brought this action; at the time of the court's determination, plaintiff was age 64, and defendant was age 54; both parties were in good health; no maintenance was awarded; plaintiff had contributed substantially to defendant's acquisition of her bachelor's and master's degrees; defendant had contributed substantially to plaintiff's career and business; plaintiff's business and defendant's academic degrees and pension were nonliquid assets; each party has and expects to continue to have a sufficient, steady income; and, defendant attempted to hide her credit union account ($10,000) to prevent plaintiff from benefitting from it. In light of Domestic Relations Law § 236 (B) (5) (d) (1), (2), (5), (6), (7), (8) and (12), the court's 50-50 division of the marital property was not inequitable or an abuse of discretion (see, Arvantides v Arvantides, 64 NY2d 1033; Reck v Reck, supra).

We reject defendant's contention that the trial court abused its discretion in awarding her 25% of plaintiff's business. Even

where the marital assets are equally divided, the court is not required to divide each asset equally *(see, Arvantides v Arvantides, supra,* at 1034; *Reina v Reina,* 153 AD2d 775, 777; *Coffey v Coffey,* 119 AD2d 620, 622). Here, the court's distribution of plaintiff's business fairly reflected the circumstances of the parties and effectuated the overall distribution of marital assets *(see, Coffey v Coffey, supra,* at 622; *see also, Reina v Reina, supra,* at 777). The value determined by the court for that business, $82,000, was within the range of the expert testimony and is supported by the record *(see, Reina v Reina, supra,* at 776; *see also, Pulitzer v Pulitzer,* 134 AD2d 84, 89).

In the circumstances of this case, the court's order that the marital residence be sold was proper *(see, Petrie v Petrie,* 143 AD2d 258, 259-260, *lv denied* 73 NY2d 702; *Tanner v Tanner,* 107 AD2d 980, 981). In addition, the court properly determined that defendant's credit union account was a marital asset *(see, Contino v Contino,* 140 AD2d 662, 662-663; *Di Bella v Di Bella,* 140 AD2d 292, 293). Finally, the court did not abuse its discretion in directing that each party be responsible for his or her own attorney's fees, costs and disbursements *(see,* Domestic Relations Law § 237 [a]; *DeCabrera v Cabrera-Rosete,* 70 NY2d 879, 881; *O'Brien v O'Brien,* 66 NY2d 576, 590, *supra).* (Appeal from Judgment of Supreme Court, Monroe County, Curran, J.—Divorce.) Present—Callahan, J. P., Green, Pine, Lawton and Davis, JJ. [As amended by order entered Oct. 7, 1992.]