OPINION OF THE COURT
Jacqueline W. Silbermann, J.
The plaintiff, Susan Davidson Chew (hereinafter Wife), commenced this action for divorce against defendant, Ralph Chew (hereinafter Husband), on August 29, 1989. The Husband counterclaimed on the grounds of abandonment. The parties stipulated to an uncontested divorce on the grounds of abandonment.
Thereafter a trial was held on February 13, 1992, March 19, 1992 and September 29, 1992 to resolve the ancillary issues of the divorce.
STATEMENT OF FACTS
The parties were married on April 14, 1975. At the time of the marriage the Wife was 25 and was completing one semester of course work and writing a dissertation for her Master’s degree in business administration. She had no other assets. During the years of the marriage she has continued to work in her chosen career achieving her present income of $180,000 per year.
When the parties were married the Husband was 47; was the sole owner of A.E. Chew & Co., Inc.; had an interest in its pension plan; and also had a half interest in a house with his *324 first wife. In the year following the marriage, the Wife worked part time while completing the requirement of the Master’s degree. Within a year she was employed full time for International Paper Company as an assistant products manager, a trainee position earning $19,000 per year.
In 1979 she obtained employment with Bloomingdales Department Stores as an assistant buyer earning $25,000 per year where she worked until 1982 at which time she had achieved the position of a group buyer. In 1982, she left Bloomingdales and commenced working for Regent Industries and ran a division called Kasper Weekend Wear at a salary of $65,000 per year. This position ended in less than a year due to the fact that the company went out of business. After being unemployed for about three months she went to work for Federated Department Stores, the parent company of Bloomingdales where she stayed for one year. As a result of the intervention of a head hunter she became divisional manager of ladies sportswear for a company called Batus which owned Saks, Marshal Fields and Gimbels at a starting salary of $85,000 per year. She remained there for three years and was thereafter hired by Leslie Faye Corporation as the president of a new division, Breckenridge Blouses at a starting salary of $90,000 per year where she stayed for one year.
At the end of that time, the same head hunter got her a job with Bernard Chaus, Inc., a women’s apparel company as president of Josephine Blouse Division at a starting salary of $125,000 per year. Each year she received salary increments of $25,000 per year so that in 1991 she was earning $200,000 per year and has been promoted to president of the Chaus Division which was the largest division of the company. In December 1991 as a result of a management change she was terminated and received $50,000 severance.
After several months of unemployment, the Wife is now employed by Fashion Overseas Bureau at a salary of $180,000 per year.
The Husband throughout the marriage was employed in his company, A.E. Chew & Co., Inc., an export sales company. In 1987 the company began having serious financial problems and in 1988 the company was liquidated by its creditors. The Husband then was employed by Pan American Trade Development for one year until that company went bankrupt. Thereafter he was employed by Bascom Corporation, a food import company setting up an export division. His employment at *325 Bascom was terminated in March 1992. At present he has started an export business out of his house which he runs as a personal proprietorship. He uses no separate business bank account and thus his checking account contains all transactions of the business. His current income is erratic and difficult to calculate.
When the parties married, they lived in a sublet on Gramercy Park, then they moved to an apartment at 39 Fifth Avenue, where they lived until April 1977. On April 1, 1977 they rented apartment 8E at 43 Fifth Avenue, a rent-stabilized apartment where the Husband continues to reside with his adult handicapped son paying rent at $1,409.65. When 43 Fifth Avenue was converted to cooperative apartments through a noneviction plan on or about 1979, the parties decided not to purchase the apartment despite the Wife’s urging. The Wife believed it to be a good investment but the Husband thought the cost of maintenance and the cost of purchase would exceed the rent.
The Wife moved out of the marital apartment on October 10, 1987. She currently resides in a loft at 82 Greene Street with Jaime Phillips and has done so since May 1988.

Master’s Degree

During the course of the parties’ marriage the Wife obtained her Master’s degree in business administration, which has enabled her to launch into a high paying career as a fashion industry executive.
The law is well settled that a degree earned during marriage is marital property subject to equitable distribution. In McGowan v McGowan (142 AD2d 355 [2d Dept 1988]), the Wife similarly earned her Master’s degree during the course of the marriage. The Court held therein that: "In the present case, in fact, the plaintiff wife forthrightly admits that her earning capacity increased as the result of her having obtained the Master’s degree. It makes little sense to construe the Domestic Relations Law in such a way as to exempt from equitable distribution an MBA from the Harvard School of Business, which in real terms could be worth hundreds of thousands of dollars, and yet to subject to equitable distribution a license to operate a junk yard (see, General Business Law § 60), upon the theory that the latter instrument, but not the former, entitles its holder to engage in a particular trade or profession” (at 359-360).
The Husband contends, citing Elkus v Elkus (169 AD2d 134 *326 [1st Dept 1991]), that the Wife’s career is a thing of value which was obtained during the marriage and is accordingly subject to equitable distribution. He concedes that he would not be entitled to an award for both the Wife’s degree and her career concluding that for valuation purposes her degree has merged with her career (citing Marcus v Marcus, 137 AD2d 131 [2d Dept 1988]).
The Wife disputes the Husband’s argument raised for the first time in the brief that her degree or career is marital property entitling him to a distributive award. First, she asserts there is no competent proof in the record as to the value of either her degree or career since both sides rested without reservation and without any expert proof being offered on the subject. The Wife contends that despite the fact that part of the degree was earned prior to the marriage, there was no attempt to calculate that portion which is separate property from that portion which is marital property (citing McAlpine v McAlpine, 176 AD2d 285 [2d Dept 1991]). She also argues that her degree no longer has a distributive value, as the defendant argued in Parlow v Parlow (145 Misc 2d 850 [Sup Ct, Westchester County 1989]), since it has merged into her career.
The court is in accord with the arguments raised by the Wife’s counsel. The Husband failed to adduce any expert proof at trial despite a full opportunity to do so and therefore, has waived any claim to a distributive award based upon the value of the Master’s degree. The failure to adduce expert testimony at trial is fatal to a claim for equitable distribution which was first made in defendant’s attorney’s posttrial brief and which set forth, for the first time, calculations as to value. (See, Pulitzer v Pulitzer, 134 AD2d 84, 89 [1st Dept 1988]; Vogel v Vogel, 156 AD2d 671, 672 [2d Dept 1989]; Gluck v Gluck, 134 AD2d 237, 239 [2d Dept 1987].) Parenthetically, this court will be awarding the Husband maintenance based on the Wife’s income stream and thus separately valuing this degree based on this same income stream might indeed be "double dipping”. (See, Parlow v Parlow, supra.)

43 Fifth Avenue

The marital residence, apartment 8E, is a rent-stabilized apartment. In 1980 the building went cooperative pursuant to a noneviction plan.
As tenants in occupancy the parties, according to the offering plan, were originally able to purchase the apartment at *327 $89,000. Although the Wife wished to purchase it, they never did. In part this was due to the Husband’s realistic belief that the costs of maintenance and a mortgage would exceed the rental they were paying.
Although the initial plan has expired along with the original "insiders” offering price, the evidence at trial reveals that if the Husband opted to buy the apartment today there still would be a difference between the price he could purchase it at from the sponsor and the fair market value.
The Wife argues that this difference between the price at which the Husband could purchase the apartment and its current market value according to her expert’s testimony is marital property which should be divided pursuant to equitable distribution.
There is no doubt that a person in possession of an apartment which is under a cooperative offering plan possesses a marketable asset as the Wife herein asserts. (Jeruchimowitz v Jeruchimowitz, 128 Misc 2d 888 [Sup Ct, NY County 1985].) This is still true albeit to a lesser extent due to the present state of the cooperative market in New York.
The Husband contends that the rent-stabilized apartment is neither marital nor separate property for purposes of equitable distribution (citing Pulitzer v Pulitzer, 134 AD2d 84, 88 [1st Dept 1988], supra). He argues that in the instant case, as in Pulitzer, the offering plan along with the right to purchase at an insiders price expired prior to the commencement of the action and, therefore, no property right existed at the commencement of the action.
The court agrees with the Wife’s position that the case at bar differs from Pulitzer (supra) in that the evidence at trial proves that despite the fact that the parties’ rights pursuant to the original offering plan expired prior to the commencement of this action there is still a difference between the price the Husband could purchase the apartment at today and the market value. However, it is also true that it is unclear whether this difference would cover the costs of such a sale such as a flip tax, transfer taxes, brokerage fees and other closing costs. Moreover, this court would not in equity force the Husband to purchase the apartment or to sell it under the present facts, including the present purchase price, the cost of the purchase and subsequent sale, the present rental and the fact that there is an adult handicapped son residing with the Husband in the apartment who would be dispossessed if the court ordered the sale.
*328 To prevent a possible windfall that may result from a purchase and sale subsequent to this decision, this court holds that in the event the Husband does exercise an option to purchase within five years of the date of this decision and then sells it at a profit, the net profit after deducting all expenses shall be divided equally between each party. The parties will each be responsible for any tax due on his/her share. This is equitable due to the Wife’s direct and indirect contributions to the value of this apartment: direct contributions in that she contributed to the rent and renovation throughout the marriage and indirect contributions as a homemaker, wife and in sharing some child care responsibilities for the Husband’s children of his prior marriage.
MAINTENANCE
Maintenance is defined in Domestic Relations Law § 236 (B) (6) (a) as something "the court may order * * * in such amount as justice requires, having regard for the standard of living of the parties established during marriage, whether the party in whose favor maintenance is granted lacks sufficient property and income to provide for his or her reasonable needs and whether the other party has sufficient property or income to provide for the reasonable needs of the other and the circumstances of the case and of the respective parties.”
In this case, the Husband has made a request for maintenance. The court will analyze this request in light of the 11 factors enumerated by Domestic Relations Law § 236 (B) (6) (a).
After conclusion of the original two days of trial, the circumstances of the parties with respect to income changed and, therefore, on consent an additional day of trial time was held on September 29, 1992 to address this subject with respect to the Husband’s request for maintenance.
(1) At the conclusion of the trial the Wife was earning $180,000 and the Husband was no longer employed but has attempted to establish an export business through his home which at present appears to be providing him with, albeit difficult to calculate, a small income. Neither will have substantial assets as a result of equitable distribution provided for herein.
(2) The marriage lasted 14 years from 1975 to 1989. At this time the Wife is 41 years old and the Husband is 64 years old and both are in good health.
*329 (3) The Wife’s future prospects are bright. It is likely that she will continue to earn substantial income and be self-supporting. The Husband at 64 is unlikely to obtain future employment. His future earning capacity is not easily quantifiable due to the nature of small businesses and the economic circumstances. His 40 years of expertise may help but may be mitigated by such factors as age discrimination.
(4) The Husband has had a lifetime of training in his present career which has allowed him until the present to earn a good income and lead a very comfortable life-style. His inability to earn substantial income as he had in the past will not change with time or training with the sole exception that he will soon be eligible for Social Security and Medicare. Both parties herein assisted the other in the pursuit of their separate careers. Neither party delayed nor let forego education, training or employment opportunities due to the obligations of this marriage.
(5-6) These factors are not relevant.
(7) Any award of maintenance herein will be deductible to the Wife and taxable to the Husband.
(8) During the marriage the Husband was the principal wage earner and also contributed to the Wife’s career by encouraging her and acting as a sounding board.
(9-10) These factors are not relevant.
During this 14-year marriage the parties maintained a comfortable life-style. Now due to age and business reverses the Husband’s future earning capacity appears uncertain while the Wife is at the height of her career.
Justice Sondra Miller in a decision relative to maintenance stated: "Statutory guidelines to determine the amount and duration of maintenance are set forth in Domestic Relations Law § 236 (B) (6), wherein the Legislature directed the courts to consider 11 factors. Analysis of those factors reveal two distinct legislative concerns relating first to the earning capacity of the parties and, second, to the equitable or meritorious nature of the application for maintenance. Impacting upon the parties’ earning ability are their age, health, and the presence of children in the home. The tax consequences of maintenance must also be considered. The equitable factors to be considered include the duration of the marriage, the sacrifice made by the person seeking support in foregoing or delaying education, training, or career opportunities, and each party’s contribution to the career or career potential of the *330 other. Also to be considered are the wasteful dissipation of marital assets or their transfer without fair consideration in contemplation of the marital action. Moreover, equity requires that the parties’ marital standard of living must be considered in gouging the ability of the recipient spouse to become self-supporting, and the amount of maintenance to be awarded. For example, while a recipient spouse with earning capacity of $20,000 per year may be considered self-supporting in a given case, that same income may be deemed insufficient in the case of a spouse who had enjoyed a higher marital standard of living.” (Sperling v Sperling, 165 AD2d 338, 343 [2d Dept 1991].)
In this case there is little or no possibility that time-limited maintenance will enable the Husband to achieve the standard of living to which he has become accustomed (Zelnik v Zelnik, 169 AD2d 317 [1st Dept 1991]; Brownstein v Brownstein, 167 AD2d 127 [1st Dept 1990]; Raviv v Raviv, 153 AD2d 932 [2d Dept 1989]; Pulitzer v Pulitzer, 134 AD2d 84 [1st Dept 1988], supra). This is true even when the court takes into account the unearned income that he will be receiving from the marital assets to be distributed. The predivorce standard of living of these parties must form the basis where possible of the court’s award. (See, Hickland v Hickland, 39 NY2d 1 [1976]; Corsell v Cornell, 101 AD2d 766 [1st Dept 1984].)
After careful analysis of all the facts in this case the court determines that the appropriate maintenance is $450 per week to be terminated at Husband’s death. The Wife should maintain a life insurance policy of $250,000 to secure these payments.
[Portions of opinion omitted for purposes of publication.]