■ LINDA VOGEL, Respondent-Appellant, v STUART VOGEL, Appellant-Respondent.—In an action for a divorce and ancillary relief, the defendant appeals and the plaintiff cross-appeals, as limited by their respective briefs, from stated portions of a judgment of the Supreme Court, Rockland County (Edelstein, J., on decision; Miller, J., on judgment), dated August 7, 1987, which, inter alia, directed the distribution of marital assets, directed the defendant to pay maintenance and child support, directed the defendant to pay the remaining portion of the accumulated arrears representing pendente lite maintenance and child support, and awarded the plaintiff the sum of $5,000 in attorney's fees.

Ordered that the judgment is reversed insofar as appealed and cross-appealed from, on the law and the facts, without costs or disbursements, the 7th through 24th decretal paragraphs thereof are deleted, and a new trial is granted with respect to the economic issues in the case, in accordance herewith; and it is further,

Ordered that the defendant is directed to continue maintenance and child support payments pursuant to the 18th and 19th decretal paragraphs of the judgment pending the new determination.

In this matrimonial action, the parties appeal from several economic aspects of the judgment of the trial court. The judgment, insofar as it grants a divorce to the parties, resolves their dispute over child custody, permits the plaintiff to resume the use of her prior name, and provides for continued jurisdiction, has not been challenged on appeal. The remaining provisions of the judgment, relating to the distribution of marital property, maintenance, and child support, are either directly challenged on appeal or inextricably related to provisions which are challenged on appeal. We find that there were several errors committed by the trial court which affect the validity of the challenged portions of the judgment, and we therefore modify the judgment accordingly and direct a new trial with respect thereto.

First, we note that the trial court failed to evaluate the major asset of the marriage, the marital residence. In its memorandum decision dated May 20, 1987, the court stated that the plaintiff contended that the marital residence was worth $192,000 and that the defendant contended that it was worth $235,000, and then went on to declare that in view of other aspects of its decision, "a precise valuation of the marital residence need not be made at this time". However, we see nothing in the remaining aspects of the trial court's decision which justifies its failure to place a value upon the largest asset of the marriage.

Second, the court erred in evaluating the largest marital asset distributed to the husband, i.e., Motel Associates of Belle Glade, a limited partnership which constitutes a "tax shelter". On appeal, the plaintiff concedes that she "did not offer any present valuation for this limited partnership interest other than its actual cost basis". The plaintiff thus "present[ed] no method for such [complicated] evaluation" *(Pulitzer v Pulitzer,* 134 AD2d 84, 89, noting complicated nature of evaluation of tax shelters). This asset may well be valueless, as is now contended by the defendant.

Third, the court erred during the course of trial with respect to its rulings concerning the relevance of certain proof that an item of marital property may have been acquired in exchange for property received by one of the parties as a result of a gift. Pursuant to Domestic Relations Law § 236 (B) (1) (d) (1), "separate property shall mean * * * property acquired by * * * gift from a party other than the spouse". Pursuant to Domestic Relations Law § 236 (B) (1) (d) (3), separate property also means "property acquired in exchange for * * * separate property". As noted by the Appellate Division, Fourth Department, in *Ackley v Ackley* (100 AD2d 153, 155), "[i]t is clear from the language of the statute that the Legislature intended that a gift from a third party to one spouse be considered the separate property of that spouse".

The defendant testified that he received bonds in the amount of $42,872.30 from his mother as a gift to him, and that this money was "used specifically for the purchase of the [marital residence]". These bonds were delivered to the defendant individually, not to him and the plaintiff jointly *(cf., Ackley v Ackley, supra)* and thus arguably constituted separate property, which the defendant then contributed to the creation of a marital asset. Under these circumstances, the defendant would be entitled to a credit against the marital estate in the sum of $42,872.30 *(see, Lauricella v Lauricella,* 143 AD2d 642; *Nalbandian v Nalbandian,* 135 AD2d 621; *Lisetza v Lisetza,* 135 AD2d 20, 24-25; *Monks v Monks,* 134 AD2d 334; *Coffey v Coffey,* 119 AD2d 620).

The trial court ruled, in effect, that as a matter of law, any gift made by a third party to one spouse is presumed to constitute a gift to both spouses jointly, so that the question of whether certain marital property might be traceable to a gift is essentially irrelevant. Such a determination is clearly erroneous since, as we have previously stated, the language of the statute regarding separate property reflects the intent of the Legislature that a gift from a third party to one spouse is to be considered the separate property of that spouse (Domestic Relations Law § 236 [B] [1] [d] [1]). While the defendant, who claims to be the intended donee of the separate property, failed to call his mother, the alleged donor, to testify as to her intent to make such a gift, he cannot be faulted for his failure in this respect in light of the attitude exhibited by the trial court in connection with this issue. The court strongly intimated that it would not credit any testimony by a parent that a gift to a married child was intended primarily for the

benefit of that child. Such testimony could, in our view, be entirely believable *(see, Ackley v Ackley, supra).*

In addition to its failure to consider whether the defendant is entitled to a credit, based on the gift from his mother which contributed to the acquisition of the parties' home, the court also failed to consider whether the defendant is entitled to a credit of $6,000 with respect to the money which was allegedly given to him by his mother and which contributed to the acquisition of a second tax-shelter investment, Treetop Associates. Although this asset was sold prior to the trial, the court nonetheless included it as an asset to be distributed to the defendant, finding that the defendant's sale of this asset (to pay for his attorney's fees) constituted a "wasteful dissipation of assets".

The court also erred when it adjusted the distribution of the marital residence by 6% in favor of the plaintiff, in order to compensate, in part, for what the court considered another wasteful dissipation of marital assets by the defendant. The court found that the defendant had dissipated marital assets by using a life insurance policy, which clearly constituted separate property, to obtain a $5,000 loan. This was clearly error.

Turning to the issues raised by the plaintiff's cross appeal, we agree with her argument that the trial court improperly vacated arrears which accrued pursuant to a prior pendente lite order. By pendente lite order dated July 7, 1983, the defendant was directed to pay $1,750 per month as combined maintenance and child support. Thereafter, the defendant sought a reduction in this pendente lite obligation on the ground that he had experienced a substantial adverse change in his financial situation, i.e., his resignation (allegedly under pressure) from his former place of employment and his subsequently becoming self-employed. His application for downward modification of the maintenance and child support provisions of the July 7, 1983, order on this ground was denied by order dated August 10, 1983, which order was affirmed by this court on appeal *(Vogel v Vogel,* 103 AD2d 1050).

The trial court in the present case found that the proper level of maintenance is $125 per week, and that the proper level of child support is $250 per week. This amounts to approximately $1,500 per month, which is about $250 per month less than the amount required to be paid by the defendant pursuant to the July 7, 1983, pendente lite order. The trial court directed that its determination as to mainte-

nance and child support should be retroactive as well as prospective, and thus, in effect, modified the July 7, 1983, pendente lite order by reducing the amount of maintenance and child support which was to be paid pendente lite from $1,750 to $1,500 per month. As a result, the trial court effectively reduced the amount of the arrears which had accumulated pursuant to the July 7, 1983 pendente lite order. This was error.

In general, a pendente lite order (or any prior order) respecting maintenance or child support, which either has not been appealed or has been affirmed on appeal, should be modified only upon the demonstration of a substantial change in circumstances or upon the demonstration of the recipient's inability to be self-supporting *(see,* Domestic Relations Law § 236 [B] [9] [b]; § 244; *Wyser-Pratte v Wyser-Pratte,* 66 NY2d 715, 716, *revg* 111 AD2d 99). Moreover, such a modification should not affect the arrears which have accumulated prior to the payor's making of an application for downward modification, unless there is "good cause" shown (Domestic Relations Law § 236 [B] [9] [b]; § 244). The only substantial change in circumstances which occurred between late 1983, when the defendant's application for downward modification of the maintenance and child support provisions of the pendente lite order was denied, and the time of trial, is the gradual *improvement* in the defendant's financial situation. His income at the time of trial was substantially *higher* than it was in 1983/1984, so that the trial court's retroactive modification of the pendente lite order, and the court's associated cancellation of arrears, were clearly unwarranted. Furthermore, the only apparent excuse for the defendant's failure to seek a reduction of his pendente lite obligations prior to the accumulation of arrears, namely that his prior application for such relief had already been denied, cannot be considered valid.

For all the foregoing reasons, a new trial is necessary. We need not pass on the remaining issues raised by the parties, since it is clear that modification of all of the interrelated economic aspects of the judgment is required on the basis of those errors above mentioned. The new trial should encompass all of the economic aspects of the equitable distribution. Mollen, P. J., Bracken, Rubin and Sullivan, JJ., concur.