426

CASSANDRA D. LOLLI-GHETTI, Respondent, v ALBERTO LOLLI-GHETTI, Appellant.

First Department, April 2, 1991*

---

* As amended by order dated May 21, 1991 *(see,* — AD2d —).

### APPEARANCES OF COUNSEL

*Rita M. Warner* of counsel *(Ellen C. Kozminsky* with her on the brief; *Coblence Warner Hamilton & Smith,* attorneys), for appellant.

*Ellen Gesmer* of counsel *(Gulielmetti & Gesmer, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

The primary issue on appeal in this matrimonial action relates to the trial court's division of marital property on a 60-40 basis in favor of the wife. The marriage was of eight years' duration and, although the wife devoted herself entirely to the care of the home and children, as well as the development of the husband's career, she made no financial contribution to the marriage. Since we believe that the court's apportionment was skewed in that it was based, at least in part, on an improper consideration and that its determination failed to take into account the husband's separate property contributions, a modification is in order.

The husband, born in 1950 and the son of a wealthy Italian shipbuilder, and the wife, born in 1951 and the daughter of a socially prominent New York family, were married on September 30, 1976. There are three children of the marriage, a son born in 1977 and two daughters, born in 1979 and 1983, respectively. The son has a learning disability for which he

receives special training and therapy. The husband, since 1977, has worked for his father's shipping company, known as Scorpio Shipping, first in its New York office, until it closed in 1984, and since 1985, at its Monaco branch. When the husband commenced employment he was a "simple employee" earning $30,000 per year and soon became a vice-president. At the time of trial, he was living in Monaco and earning $90,000 per year, tax free. Pregnant at the time of the marriage, and with minimal employment experience, although she had a degree from a junior college and was licensed as an insurance broker, the wife did not work outside of the home during the marriage. She suffers from a mild form of multiple sclerosis which, at the time of trial, did not require physical or psychiatric therapy. During the marriage, the parties enjoyed what can only be described as a lavish life-style.

Prior to the marriage, the husband, in his own name, rented a luxury rental apartment (17G) at 425 East 58th Street in Manhattan, in which he resided at the time of the marriage. After the marriage, the wife moved into the apartment, and the parties subsequently signed a lease in both their names. In November 1978, the apartment was purchased—in the husband's name—for $67,840. At or about the same time, less than two years later, the husband sold the apartment to his sister for $90,000 and for $190,400 purchased another apartment (32H) in the same building, which the parties renovated at a cost of about $40,000. In November 1980, an apartment at 640 Park Avenue was purchased, in the husband's name alone, for $825,000; around the same time apartment 32H was sold to defendant's sister for $900,000. The Park Avenue apartment, used as a doctor's office for the past 40 years, was in a deteriorated condition and had to be extensively renovated. The work, which was supervised by the wife, began in November 1980 and was completed in September 1982 at a cost of $887,331.

During approximately the same period of time the wife also supervised the two-year renovation of a house on Ox Pasture Road in Southampton, New York. This seven-acre estate, held in the name of a Netherlands Antilles corporation to which the husband's father held the bearer shares, was purchased in September 1980 for the use and enjoyment of the parties. (The court ultimately found that it was not subject to equitable distribution.)

In 1981, the husband bought property in Southampton known as Pheasant Lane for $175,000 and sold it one year

later at a $60,000 profit. The husband, in 1982, invested $206,000 in a real estate partnership called Fox Fire Associates. He financed this investment in part with $147,000 borrowed from one of his father's companies. (In December 1982, the husband's father gave him a gift of about $430,000, part of which the husband used to repay this loan.) In 1981 the husband also invested $75,000 in a property known as the Remsenberg property, which was sold in 1986 and from which the husband received approximately $130,000. In 1983, the husband purchased a 45% interest in Bravo Gianni Restaurant. He invested about $18,000 in cash in this venture and guaranteed a loan for $350,000. The husband also owned stock in Arbor Energy, Inc.; it was valued at $1,200.

Around Christmas 1983, a few weeks after the birth of their third child, the husband told the wife that he was considering moving to Monaco, where she would live "like a queen", and that he intended to keep apartments in London and New York, as well as a weekend house at Cap Ferrat, and spend summers in the Southampton house, where they could visit with the wife's family. The following February, the parties went to Monaco to choose an apartment for the family and schools for the children. They rented a six-bedroom apartment for $3,800 plus escalations and renovated and decorated the apartment at a cost of about $200,000. But before the family relocated, the marital relationship had allegedly deteriorated to the point where the husband was physically abusing the wife, and, in August 1984, she commenced this action for divorce on the ground of cruel and inhuman treatment and for ancillary relief.

The husband counterclaimed for divorce on the same ground. After 22 days of trial in August through October 1987, the court granted each party a divorce on the ground of cruel and inhuman treatment and disposed of the financial issues. Issues of custody, ultimately awarded to the wife, and visitation were reserved for subsequent determination. The court awarded the wife a 60% distributive share of the Park Avenue apartment as well as of all other assets found to be marital property.

The court directed the husband to pay the expenses on the cooperative apartment (approximately $3,000 per month) until its sale and, thereafter, up to $1,500 per month for the carrying charges or rent of a substitute residences, as long as the children lived with her. It also awarded the wife maintenance for two years in the amount of $1,000 per month and

child support in the amount of $500 per month per child; directed the husband to pay all of the wife's expenses for nonelective medical services during the period for which he was required to pay maintenance and directed the husband to pay, with respect to the children, all educational and medical expenses and to maintain life insurance policies for their benefit. The court also awarded the wife a money judgment in the sum of $58,829, $49,500 for arrears in maintenance and child support and $9,329 to reimburse the wife for medical expenses. Finally, the wife was awarded $100,000 in counsel fees and $4,000 in accountant and appraiser fees. Defendant appeals.

■ In arguing that the court erred in classifying the Park Avenue apartment as marital property, the husband cites the fact that the apartment was purchased in his name, the purchase and renovation were paid for with an $800,000 cash gift to him from his father and the $900,000 sale price of apartment 32H, and that the wife made no financial contribution to the purchase, renovation or upkeep of the apartment. Unless proven otherwise, all property acquired by either or both spouses during the marriage is marital property, regardless of in whose name title to the property is taken. (Domestic Relations Law § 236 [B] [1] [c]; *Price v Price*, 69 NY2d 8, 11.) There is an exception for separate property, which is defined to include property acquired by gift from a party other than the spouse. (Domestic Relations Law § 236 [B] [1] [d] [1]; *Price v Price, supra.*)

■ Though the original marital apartment—apartment 17G—was purchased in 1978 in the husband's name and paid for with his separate property—part of the $500,000 cash gift from father to son—the purchase could not have been made without the wife's consent since, as a cotenant, she had an equal right to purchase. *(See, Spitalnik v Springer,* 59 NY2d 112.)* Inasmuch as the right to purchase a cooperative apartment is a valuable property right *(see, Pulitzer v Pulitzer,* 134 AD2d 84, 88),* it is clear that the wife contributed to the purchase of that apartment. Accordingly, the source of the funds for its purchase notwithstanding, the apartment was not separate but marital property, as were the proceeds from its sale.

Since the next acquired marital apartment—apartment 32H—was purchased with these proceeds, as well as with additional funds provided by the husband's father, it, too, was marital property. The renovation of apartment 32H, overseen

by the wife, increased its value and provides a further basis for classifying the proceeds from the sale of that apartment as marital property. The proceeds from the sale of apartment 32H to the husband's sister at an inflated price of $900,000, although paid by the husband's father, were in exchange for marital property. Thus, those funds were available for the purchase of the Park Avenue apartment, which, when purchased, was marital property. Since the gifts of money to the husband from his father which financed the renovation of the apartment were commingled with marital property, there is no reason to disturb the court's finding that the funds used for the renovation were "largely marital assets". Thus, we agree with the IAS court that the Park Avenue apartment is marital property.

We believe, however, that the husband should receive a credit for the contribution of his separate property toward the creation of this marital asset (see, Coffey v Coffey, 119 AD2d 620, 622; see also, Vogel v Vogel, 156 AD2d 671, 673) and, therefore, credit him with the sum of $67,840 for his contribution of separate property to the purchase of the first marital residence.

■ The husband also argues that since he purchased his interest in Fox Fire for $206,000 in separate funds, it was erroneously found to be marital property. According to the husband, $147,500 of this amount was a loan from his father's shipping company, which he repaid with a $430,000 gift from his father. The balance of $58,500, he argues, in the absence of other funds, must be deemed to have come from that gift as well. Since this asset was acquired during the marriage and there was no evidence to trace $58,500 of the purchase price to the husband's separate property, the court was entitled to conclude that it, too, was marital property. The husband's contribution of $147,500 to the purchase of Fox Fire, however, should be considered separate property, for which he is entitled to a credit. While the wife contends that the $147,500 loan was a prerequisite of the husband's employment and therefore marital property, we think it more realistic to view this loan as emanating from the familial relationship between the husband and the ownership of the business. In any event, a loan is an obligation rather than an asset and thus, in this context, cannot be classified as "property", either separate or marital. Since the $430,000 gift, expressly found to be the husband's separate property, was used, in part, to repay the loan, he is entitled to credit the amount of the loan, $147,500,

against the value of the asset. *(See, Vogel v Vogel,* 156 AD2d 671, 673, *supra.)*

In awarding the wife an interest in 60% of the Park Avenue marital residence, the court found that the money to purchase it had come from the husband's father, who, as already noted, had bought the previous marital residence—apartment 32H—for his daughter for $900,000, which enabled the husband to pay $825,000, plus closing costs and legal fees, for the Park Avenue apartment. The court noted, however, that, the wife's supervision of the renovation contributed to the appreciation in value (along with general market forces), that the husband at no time attempted to segregate gifts from his father from funds he derived from his own earnings and distributions and that funds expended for the renovation of the apartment were "in large part" marital assets. Thus, while "reluctant" to award the wife the apartment in view of the "large contributions made of separate assets by the [husband's] father," the court was "cognizant" of the "hardships" suffered by her as a result of the husband's withholding of pendente lite payments, the difficulty involved in uprooting a family and finding adequate housing and in enforcing any distributive award or support and maintenance award in Monaco. In awarding the wife 60% of the Arbor Energy stock in the husband's name, which the husband conceded must be distributed, the court cited his "continued reluctance" to make timely pendent lite payments and the consequent need to litigate these defaults. Primarily relying on her contributions to the marriage as wife and mother, the court distributed the remaining marital property on a 60-40 basis in the wife's favor.

■ Initially, we note that while the distribution of marital assets should reflect the individual needs and circumstances of the parties (Governor's mem relating to L 1980, ch 281, 1980 McKinney's Session Laws of NY, at 1863) and that, in addition to the statutory factors, a court is required to consider any other factor found to be "just and proper" (Domestic Relations Law § 236 [B] [5] [d] [13]), we do not think that a spouse's recalcitrance in the bitter aftermath of the breakup of a marriage or even his or her failure to comply with support obligations are appropriate considerations in fashioning such an award, since they relate neither to a spouse's contribution to the economic partnership or to his or her ability to be economically productive once the partnership has ended. Any award based on such considerations would, in our view, be more punitive than equitable. In any event, since the

wife's litigation costs were provided for in the award of counsel fees, and a security fund was established to safeguard against any further failure of the husband to meet his court-ordered obligations, any allowance for these factors in the property distribution award would be duplicative.

While we agree with the trial court insofar as it recognized the wife's noneconomic contributions to the marriage as home-maker and mother and her labors which significantly contributed to the appreciation in value of the Park Avenue apartment, we do not think that these factors justify a 60-40 apportionment. In our view, rather, a division of the marital property on a 50-50 basis more equitably balances such factors with the husband's financial contribution to the acquisition of marital assets.

■ The husband attacks the child support and maintenance awards, arguing that open-ended obligations are prohibited. *(See, e.g., Weinstein v Weinstein,* 125 AD2d 301; *Matter of Dapolito v Dapolito,* 150 AD2d 375.)* These awards were entirely appropriate. In any event, the prohibition against open-ended obligations is a Second Department rule and one which this court has expressly declined to follow. *(See, Pulitzer v Pulitzer,* 134 AD2d 84, 88, *supra.)* The husband also argues that the wife should not have been awarded tax-free maintenance. However, since he is now a resident of Monaco and the bulk of his income is therefore not even subject to Federal, State, or local income taxes, he would not derive a substantial benefit if the maintenance payments were deductible by him and therefore taxable to her. Similarly, we reject the husband's argument that the trial court erred in failing to allocate the child support obligation between the parties. There is no case which so holds. Further, pursuant to Domestic Relations Law § 236 (B) (7) (a) (5), now § 240 (1-b) (f) (5), the court is required to consider the "non-monetary contributions that the parents will make toward the care and well-being of the child[ren]."

The husband argues that the wife should have been denied counsel fees and expert fees. She requested more than $668,000 in counsel fees and $18,000 in expert fees, and was awarded $100,000 and $4,000, respectively. Under the circumstances of this case, particularly noting the duration of the trial, we find no abuse of discretion which would warrant our interference with these awards.

■ The husband also argues that the award for arrears was

in error since, pursuant to Domestic Relations Law § 241, the court may cancel maintenance (but not child support) arrears which may have accrued during the time that visitation rights have been withheld. Initially we note, as the husband concedes, that only one half of this award was attributable to maintenance. In our view, however, he has failed to demonstrate that the wife thwarted his visitation rights to such an extent as to entitle him to such relief.

We have considered the husband's remaining contentions and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered April 24, 1989, which granted dual divorces on the ground of cruel and inhuman treatment and resolved financial and other issues, should be modified, on the law and on the facts, and in the exercise of discretion, to reflect a distribution of marital property awarding 50% to plaintiff and 50% to defendant and to credit defendant with the total sum of $215,340, representing his contributions of separate property to the acquisition of marital assets, and, except as thus modified, affirmed, without costs or disbursements. The order of the same court and Justice, entered March 2, 1990, which, *inter alia,* denied renewal, resettlement and modification of the judgment, should be affirmed, without costs or disbursements.

KUPFERMAN, J. P., CARRO, MILONAS and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 24, 1989, modified, on the law and on the facts, and in the exercise of discretion, to reflect a distribution of marital property awarding 50% to plaintiff and 50% to defendant and to credit defendant with the total sum of $215,340, representing his contributions of separate property to the acquisition of marital assets, and, except as thus modified, affirmed, without costs or disbursements; and order of said court entered on March 2, 1990, affirmed, without costs or disbursements.