**FREESTON DRAYTON, Appellant/Defendant**

**v.**

**NADIA DRAYTON, Appellee/Plaintiff**

S. Ct. Civil No. 2015-0068

Supreme Court of the Virgin Islands

August 30, 2016

326

328

MARTIAL A. WEBSTER, SR., ESQ., Law Office of Martial A. Webster, Sr., St. Croix, USVI, *Attorney for Appellant.*

RICHARD AUSTIN, ESQ., SHERICA B. H. JAMES, ESQ., Legal Services of the Virgin Islands, Inc., St. Croix, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (August 30, 2016)

SWAN, *Associate Justice*. Appellant, Freeston Drayton ("Mr. Drayton"), appeals the Superior Court's amended findings of fact and conclusions of law, which distributed separate and marital property between him and his former wife, Nadia Drayton ("Ms. Drayton"). For the reasons elucidated below, we remand this case to the Superior Court for the equitable distribution of the 2009 Ford Escape vehicle purchased by Mr. Drayton, as well as for the equitable distribution of the parties' marital debt, consistent with the evidence presented. We affirm the court's September 1, 2015 amended findings of fact and conclusions of law in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

Mr. and Ms. Drayton married in St. Croix in August 2000, and two children were born of the marriage. The parties eventually settled in their marital home in either December 2008 or December 2010, at No. 676 Barren Spot, St. Croix. Ms. Drayton was a housewife for a significant period of the marriage, before she eventually became employed part-time at the local hardware store. She was also the primary caretaker of the children. Mr. Drayton, on the other hand, worked as a construction tradesman and was the primary financial contributor to the household. Mr. Drayton built the parties' home at No. 676 Barren Spot on land which he had purchased for approximately $22,000, in or about 1995. The deed for the property named him as the sole owner of record. After the parties began residing in the home at No. 676 Barren Spot, Ms. Drayton requested that Mr. Drayton name her as a deed holder to the property, but he refused.

During the marriage, Ms. Drayton owned a home in Antigua, West Indies, which she sold between 2006 and 2007. Ms. Drayton testified that with the proceeds from the home sale, she contributed to the purchase of windows for the parties' home and paid some of the parties' credit card bills. Conversely, Mr. Drayton was adamant that Ms. Drayton never contributed financially to the building of the home. During the course of

330

the marriage, Mr. Drayton purchased a 2009 Ford Escape, which cost $21,000. At the car dealership, Mr. Drayton gave Ms. Drayton the keys to the Ford Escape, and told her the vehicle was hers. However, Mr. Drayton never transferred the vehicle's title to Ms. Drayton, and he refused her request for him to effectuate a transfer. Mr. Drayton further testified that he never intended to give the vehicle to Ms. Drayton as a gift.

The parties also accrued credit card debt during the marriage in excess of $20,000. The credit cards were used to purchase household items and supplies, food and childcare, and fund other general expenses for the home. Ms. Drayton further testified that she used the cards to purchase clothing and shoes for the family, including herself. There was no evidence that the credit cards were used for items or purposes other than for the benefit of the household.

Ultimately, the marriage deteriorated and Ms. Drayton left the marital home in February 2013. She filed for divorce four months later, in June 2013. According to Ms. Drayton, her departure from the home was caused by mental and verbal abuse from Mr. Drayton. Mr. Drayton, however, testified that Ms. Drayton told him that she no longer needed to remain married because she had, with his assistance, successfully adjusted her immigration status. Ms. Drayton requested the Superior Court's permission to return to the home in May 2013, three months after her departure.

By a final divorce decree dated May 5, 2015, the parties' marriage was formally dissolved, and this case came before the Superior Court for a bench trial on June 15, and June 16, 2015. Pursuant to these hearings, the court entered amended findings of facts and conclusions of law on September 1, 2015. The trial court awarded each party a 50% interest in the proceeds from the sale of the marital home, after Mr. Drayton's receipt of his pre-marital investment in the home. The court concluded that the 2009 Ford Escape was a gift from Mr. Drayton to Ms. Drayton and awarded Ms. Drayton sole ownership of the vehicle. The court made no distribution of any proceeds from the Antigua home sale, citing insufficient evidence. With the exception of a bed set for which Mr. Drayton was awarded $600, the court found that Mr. Drayton had failed to prove that he was entitled to compensation for other missing personal property, largely comprised of furniture, tools and construction materials. Lastly, the trial court also concluded that Mr. Drayton had failed to prove that he was entitled to any compensation from

331

Ms. Drayton to pay the parties' credit card bills. Mr. Drayton's timely appeal ensued.

## II. JURISDICTION AND STANDARD OF REVIEW

■ Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Given that the Superior Court's September 1, 2015 amended findings of fact and conclusions of law constitutes a final judgment, we exercise jurisdiction over this appeal. *See Bradford v. Cramer*, 54 V.I. 669, 671 (V.I. 2011) (final order in divorce case is an appealable judgment).

The standard of review in examining the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Martin v. Martin*, 58 V.I. 620, 624-25 (V.I. 2013). We review the Superior Court's distribution of marital assets in an action for divorce for abuse of discretion. *Id.* at 625 (citing *Harvey v. Christopher*, 55 V.I. 565, 572 (V.I. 2011)); *Garcia v. Garcia*, 59 V.I. 758, 766-67 (V.I. 2013). Lastly, this Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction. *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008).

## III. DISCUSSION

### A. The Superior Court possessed subject matter jurisdiction to distribute all of Mr. Drayton and Ms. Drayton's marital property.

■ ■ Preliminarily, we are impelled to *sua sponte* dispose of a jurisdictional issue not raised by either party on appeal or before the Superior Court, but which this Court has not yet addressed. *See Virgin Islands Waste Management Auth. v. Bovoni Investments, LLC*, 61 V.I. 355, 363 (V.I. 2014) ("[I]t is well established that a court may consider the issue of subject matter jurisdiction *sua sponte*" (internal quotation marks and citation omitted)); *In re Guardianship of Smith*, 54 V.I. 517, 527 (V.I. 2010) (an appellate court may *sua sponte* raise questions regarding a trial court's subject matter jurisdiction). We observe that Ms. Drayton filed for the dissolution of the marriage in June 2013, at which time the Family Division of the Superior Court had only been conferred jurisdiction to

distribute "the marital homestead and the personal property of the couple, but not . . . any other real property." *Bradford*, 54 V.I. at 676 (citing 16 V.I.C. § 109(a)(4); 33 V.I.C. § 2305(d)). Subsequently, on December 19, 2014, the Virgin Islands Legislature expanded the Family Division's jurisdiction in cases in which it dissolves a marriage or declares a marriage void. With the enactment of 16 V.I.C. § 109(a)(7), the Family Division became empowered to decree for the award of *all* the marital property of divorced spouses. The statute defines marital property as:

> all real and personal property acquired by either spouse subsequent to the marriage, except:
>
> > (A) Property acquired by gift, bequest, devise, or descent;
> >
> > (B) Property acquired in exchange for property acquired prior to the marriage, or in exchange for property acquired by gift, bequest, devise, or descent;
> >
> > (C) Property acquired by a spouse after a decree of legal separation;
> >
> > (D) Any judgment or property obtained by judgment awarded to a spouse from the other spouse;
> >
> > (E) Property excluded by valid, written agreement of the parties; and
> >
> > (F) Income from property acquired by a method listed in subparagraphs (A) through (E), if the income is not attributable to the personal effort of a spouse.

16 V.I.C. § 109(a)(7). Therefore, "[w]henever a marriage is declared void or dissolved," the court may decree "for the award to the parties of all marital property, in accordance with principles of equitable distribution." 16 V.I.C. § 109(a)(1) & (7).

Mindful that this divorce action was instituted prior to the effective date of the statute, we must first examine whether the court properly applied the current statute to exercise jurisdiction over all of Mr. and Ms. Drayton's marital property. Generally, "statutes . . . are presumed to be applied prospectively, and not retroactively." *Walters v. Walters*, 60 V.I. 768, 781 n.14 (V.I. 2014) (citing *Davis v. Omitowoju*, 883 F.2d 1155, 1170 (3d Cir. 1989)). And while courts "have long embraced a presumption against statutory retroactivity, for just as long [courts] have recognized that, in many situations, a court should 'apply the law in effect at the time

333

it renders its decision,' . . . even though that law was enacted after the events that gave rise to the suit." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) (quoting *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974)). Thus, the presumption that statutes are to be applied prospectively can be overcome where "the statute is remedial or procedural in nature." *Workplace Sys., Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 143 N.H. 322, 723 A.2d 583, 584 (1999); *Landgraf*, 511 U.S. at 273-75 (holding that "application of new statutes passed after the events in suit is unquestionably proper in many situations") (collecting and discussing multiple United States Supreme Court cases). Indeed, the United States Supreme Court noted that it has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf*, 511 U.S. at 274.

■■ Here, section 109 expanded the Family Division's jurisdiction to equitably distribute all marital property. The Family Division of the Superior Court recently addressed the retroactivity of section 109 in *Thompson v. Thompson*, 64 V.I. 71 (V.I. Super. Ct. 2016). In *Thompson*, the court applied the United States Supreme Court's two-part test articulated in *Landgraf* for determining when a federal statute may be applied retroactively. First, the court must examine whether the Legislature "expressly prescribed the statute's proper reach." *Thompson*, 64 V.I. at 75-76 (quoting *Landgraf*, 511 U.S. at 280). Then, in the absence of an express legislative command, the court must analyze "whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 76 (quoting *Landgraf*, 511 U.S. at 280). The Superior Court determined that there was no express command regarding section 109's proper reach embodied in the legislation itself. *Id.* at 77. It then found that application of section 109 would have no retroactive effect on the parties, but instead, "promotes judicial efficiency, discourages forum shopping, and advances the principles of equity intended by the Legislature." *Id.* at 78 (holding that "there is no impairment of the rights of the parties, increased liability, or imposition of new duties upon the parties").

■ We agree. By its plain text, section 109 does not preclude its application to divorce actions filed before the effective date of the statute. Furthermore, its application does not affect the parties' substantive rights, but rather permits them to streamline the judicial process by resolving all issues of property distribution in a single action, as opposed to being required to file a separate civil action to partition the property. *See Landgraf*, 511 U.S. at 274 (holding that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case' " (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S. Ct. 202, 60 L. Ed. 409 (1916)). Of particular significance are the legislative history of 16 V.I.C. § 109(a)(7) and the jurisprudential background against which it was enacted. The bill summary for Bill No. 30-0392, which amended 16 V.I.C. § 109, noted the courts' recognition that 33 V.I.C. § 2305(d) only authorized the Family Division to distribute the marital homestead and the parties' personal property. The bill summary also acknowledged that there was no other provision in the Code addressing the distribution of other marital real property. The bill summary then provides, "[t]he intent of this bill is to confer jurisdiction on the divorce courts to distribute other property acquired by the parties subsequent to the marriage, with the exception of certain properties that should . . . be excluded from distribution as marital property." Bill No. 30-0392 (V.I. Reg. Sess. 2014) (enacted as Act No. 7702). It is evident, therefore, that the Legislature enacted 16 V.I.C. § 109(a)(7) as a remedy for spouses having to pursue a separate civil action for the partition and/or distribution of their marital assets not then governed by the Virgin Islands Code. For this Court to find that the current statute applies only to actions that were filed after its effective date would be to contravene the very remedial purpose which the Legislature contemplated, by reading into the statute an exception that is not evident on its face.

■ ■ Accordingly, we conclude that 16 V.I.C. § 109(a)(7) was intended to apply to marital property distributions made on or after the effective date of the statute, December 19, 2014. *See Workplace Sys.*, 723 A.2d at 584 (noting that statutes are generally found to be applicable to "those pending cases which on the effective date of the statute have not yet gone beyond the procedural stage to which the statute pertains" (internal quotation marks and citation omitted)). Considering that the divorce decree in this case was entered in May 2015, after the enactment

of the statute, the trial court properly applied 16 V.I.C. § 109(a)(7) in distributing the parties' marital property.

## B. The trial court did not err in its distribution of the marital home.

As the bases for his contention that the Superior Court erred in awarding his former wife an interest in the marital home, Mr. Drayton claims that Ms. Drayton abandoned the marital home before filing for divorce; that Ms. Drayton made no financial contributions towards the marital home; and that ownership of the property is recorded solely in his name. We find these arguments meritless.

### 1. Ms. Drayton did not abandon the parties' marital home.

Mr. Drayton does not explicitly argue that Ms. Drayton's alleged abandonment of the home at No. 676 Barren Spot disqualifies the home from being considered marital property, and no such argument was presented to the Superior Court. Instead, he merely suggests that because Ms. Drayton voluntarily vacated the home in February 2013 — four months prior to her filing for divorce — the court's 50% distribution to Ms. Drayton was somehow inequitable.

 This Court has previously interpreted the term "marital homestead" to mean "any 'homestead' in which a husband and wife both reside during the marriage and that is owned by one or both of the spouses." *Harvey*, 55 V.I. at 573; *see also Garcia*, 59 V.I. at 767; *Bradford*, 54 V.I. at 677. In *Garcia*, this Court determined that a home would not qualify as a marital homestead if a party abandoned it before filing for divorce. 59 V.I. at 770. Accordingly, we stated that "the existence of a marital homestead is a jurisdictional requirement." *Id.* Therefore, regardless of the manner in which Mr. Drayton's abandonment argument is framed, a finding of abandonment of the marital homestead by Ms. Drayton raises a critical, threshold question of the Superior Court's jurisdiction to distribute that home.[1] On this issue, we first

---

[1] Mr. Drayton owned plot No. 676 Barren Spot prior to marrying Ms. Drayton, which means the property would ordinarily be classified as separate property not subject to distribution as part of a divorce proceeding. 16 V.I.C. § 109. However, because the parties built their home on the property and lived there for many years as a family, it constitutes a marital homestead under Virgin Islands law. *See Harvey*, 55 V.I. at 573 (citing 33 V.I.C. § 2305). Therefore, in

consider whether Ms. Drayton's vacating the home constituted abandonment, thereby nullifying the existence of a marital homestead. *Tindell v. People*, 56 V.I. 138, 145 (V.I. 2012) ("[I]f the alleged error relates to the Superior Court's subject matter jurisdiction, this Court exercises plenary review regardless of whether the issue was brought to the attention of this Court or the Superior Court.") (citing *Guardianship of Smith*, 54 V.I. 517, 524 (V.I. 2010)).

In *Garcia*, regarding the question of whether a marital homestead existed, we ultimately held that the Superior Court had failed to issue sufficient factual findings or conclusions of law to justify its conclusion that it had jurisdiction over the home which the former spouses had once shared. 59 V.I. at 771-72. Specifically, the trial court made no finding regarding whether Edna Garcia's absence from the home for almost four years, after discovering that her former husband had engaged in an extramarital affair, constituted abandonment of the marital homestead. Moreover, during the trial, she was never asked to explain her absence from the home. *Id.* at 764.

█ Here, in the trial court's amended findings of fact and conclusions of law, the Superior Court made a similarly brief finding regarding its jurisdiction over the property characterized as the marital homestead. The trial court determined, "[t]he parties lived together at [the] #676 Barren Spot home with the minor children from 2003 until their separation in 2013. Therefore, the #676 Barren Spot property is the marital home."[2] (JA at 13.) Analogous to the trial court's oversight in *Garcia*, the Superior Court, in this case, did not mention the four-month period during which Ms. Drayton was not occupying the home, from February 2013 to her filing for the dissolution of the marriage in June 2013. However, in the *Garcia* decision, we were careful to explicate that "not all separations will

---

this case, the Superior Court derived its jurisdiction to distribute the property from its classification as a marital homestead, *id.* (citing 33 V.I.C. § 2305(d)), and not because it is classified as marital property under 16 V.I.C. § 109. Thus, the issue of abandonment is highly relevant to whether the Superior Court had jurisdiction to distribute No. 676 Barren Spot as part of the divorce proceeding, as a finding that one spouse had abandoned the home removes its classification as a marital homestead. *Garcia*, 59 V.I. at 770.

[2] We do note that this finding is partially incorrect, as the testimony was that the parties began living in the home at No. 676 Barren Spot in either December 2008, or at the latest, December 2010. However, this does not disturb this Court's analysis on the issue of whether this home constituted a marital homestead over which the court was at liberty to exercise jurisdiction, or the equity of the eventual distribution of the marital homestead.

result in abandonment." *Id.* at 770. And, in reviewing the trial record before us, we find that Ms. Drayton did not abandon the marital homestead.

■ When both parties commenced living in the home at No. 676 Barren Spot after they married, the home lost its identity as solely Mr. Drayton's property. It became the marital homestead, and Ms. Drayton acquired a legally cognizable property interest in that home. *Harvey,* 55 V.I. at 573; *see Drumright v. Drumright,* 812 So. 2d 1021, 1025 (Miss. Ct. App. 2001) ("Even though [the former husband] owned a major premarital interest in the home, once [the former wife] moved into the home following the marriage, she gained an equitable interest."). Therefore, for this Court to now entirely divest Ms. Drayton of that interest, find that she abandoned the home, and repudiate any existence of a marital homestead, Ms. Drayton must not have simply vacated the home, but must have voluntarily and intentionally relinquished or disclaimed her property rights. *Garcia,* 59 V.I. at 769 ("[I]n the property law context, one abandons a property by voluntarily relinquishing any rights to it.") (citing BLACK'S LAW DICTIONARY 2, 1336 (9th ed. 2009)). In *Prue v. Royer,* 193 Vt. 267, 67 A.3d 895 (2013), the Supreme Court of Vermont recognized that:

> [m]ere relinquishment of the possession of a thing is not an abandonment in a legal sense, for such an act is not wholly inconsistent with the idea of continuing ownership; the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment.

*Id.* at 908-09 (citations omitted).

■ As an initial matter, since Mr. Drayton is claiming that Ms. Drayton abandoned the home, he bears the burden of proving this allegation with clear and competent evidence. *Parker v. Johnson,* 368 Ark. 190, 244 S.W.3d 1, 6 (Ct. App. 2006) ("The burden is upon one claiming that a homestead has been abandoned to establish that fact.") (citing *Melton v. Melton,* 126 Ark. 541, 191 S.W. 20 (1917)); *Caulley v. Caulley,* 806 S.W.2d 795, 797 (Tex. 1991) ("Once homestead rights are shown to exist in property, they are presumed to continue, and anyone asserting abandonment has the burden of proving it by competent

evidence."); *In re Estate of Fink*, 4 Kan. App. 2d 523, 609 P.2d 211, 216 (1980) (where a homestead interest in property has been established, the burden of proof is on the party attempting to defeat that interest to show by positive and clear evidence that the homestead has been abandoned); *cf. Malloy v. Reyes*, 61 V.I. 163, 179 (V.I. 2014) (explaining that one who claims that a public easement has been abandoned must "prove it by clear and satisfactory evidence" (quoting *Picayune Wood Products Co. v. Alexander Mfg. Co.*, 227 Miss. 593, 86 So. 2d 480, 484 (1956))).

 Here, Mr. Drayton has failed to substantiate that Ms. Drayton's actions were clearly indicative of an intent to abandon her equitable property rights, thereby nullifying the existence of the marital homestead. *See Parker*, 244 S.W.3d at 6 ("[I]ntention to abandon [a homestead] is an issue of fact, and in such a situation, evidence is rarely clear. However, the legal presumption is that the homestead right continues until it is clearly shown that it has been abandoned."). Regarding her departure from the home in February 2013, Ms. Drayton testified that she was "forced" out of the home due to mental and verbal abuse, and she explains — as her counsel did before the Superior Court — that the home to which she relocated after her departure from the marital homestead was secured with the assistance of the Domestic Violence Assistance program in the Women's Coalition of St. Croix.

 In *Garcia*, we explained that "one spouse does not abandon the marital home if the other spouse engaged in wrongful conduct that required the spouse to leave for his or her safety." 59 V.I. at 770. Mr. Drayton reasonably argues that Ms. Drayton had no intention to return to the marital homestead when she allegedly denied "need[ing] him anymore" because she had adjusted her immigration status, "voluntarily moved out," and "got her own apartment." (Appellant's Br. at 11-12.) However, this contention is belied by the fact that Ms. Drayton began requesting the court to permit her to return to the home as early as three months after she vacated the residence. *See Prue*, 67 A.3d at 909 (explaining that an "important factor in finding intent [to abandon property rights] . . . is the context of the abandonment of the premises" and recognizing that "in searching for signs of intent to abandon, courts look to parties' actions after leaving a property"). In light of these circumstances, Mr. Drayton has failed to meet his burden of presenting clear and competent evidence to establish that Ms. Drayton abandoned and disclaimed her property rights in the home located at No. 676 Barren

Spot, destroying the homestead character of the property. Accordingly, the trial court did not err in finding that this residence was the marital homestead and therefore subject to the jurisdiction of the Superior Court.

### 2. The trial court's distribution of the marital homestead was equitable.

■ Mr. Drayton claims that his former wife should have not been awarded any interest in the marital homestead because she made no financial contributions to the marital home and ownership of the home was recorded solely in his name. However, Mr. Drayton adopts a misguidedly narrow view of the decisive factors which influence the court's distribution of the marital homestead. This Court has endorsed the Superior Court's consideration of multiple factors when equitably distributing a marital homestead during a divorce proceeding, including: recorded ownership, monetary contributions, paid property taxes and homeowner's insurance, living arrangements, subsequent marriages, and home improvements. *Martin*, 58 V.I. at 626-27 (affirming award of marital homestead to wife as part of equitable distribution of marital assets).

■ The Appellate Division of the United States District Court of the Virgin Islands delineated the following factors for consideration:

> the duration of the marriage, prior marriage of either party, antenuptial agreement of the parties, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, . . . the opportunity of each [party] for future acquisition of capital assets and income[,] . . . the contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the . . . estate[ ], and the contribution of a spouse as a homemaker or to the family unit.

*Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 395 (D.V.I. App. Div. 2003) (citations omitted).

■ In applying the salient factors which must be considered to the circumstances of the parties' marriage in this case, there is no indication that the court's grant of 50% interest in the marital homestead to

Ms. Drayton was inequitable, let alone an abuse of its discretion. First, the parties were married for fifteen years. Second, in weighing the equities, the Superior Court properly concluded that both parties "contributed equally to the home." Mr. Drayton's argument that his wife did not contribute to the home financially is misplaced, since there is no dispute that Ms. Drayton was primarily a housewife — taking care of the children, cooking meals, and cleaning the home — while Mr. Drayton was the main provider of financial support for the home, working as a construction tradesman.[3] Ms. Drayton further testified that when Mr. Drayton began building the home, she cooked meals for friends who were assisting with its construction. Yet again, Mr. Drayton offered no modicum of evidence refuting his former wife's testimony as to her household duties. The court also determined that Ms. Drayton "provid[ed] upkeep and financial contributions from her employment selling food and from proceeds of her admitted sale of the Antigua property and car[ed] for the children." (JA at 13.)

 Ms. Drayton's contributions as a homemaker can neither be discounted nor overlooked. *See Francis v. Wright-Francis*, 61 V.I. 13, 30 (V.I. Super. Ct. 2014) ("The Virgin Islands has long viewed 'marriage as a partnership or joint venture, whereby both parties collaborate for a common purpose and contribute toward its success.' " (quoting *Fuentes v. Fuentes*, 247 F. Supp. 2d 714, 717 (D.V.I. App. Div. 2003)); *Armstrong*, 266 F. Supp. 2d at 395 (considering the "contribution of a spouse as a homemaker or to the family unit"); *see also King v. King*, 760 So. 2d 830, 837 (Miss. Ct. App. 2000) ("[I]t is settled that non-economic, domestic contributions are of equal value to financial contributions when assessing marital assets."); *Lolli-Ghetti v. Lolli-Ghetti*, 165 A.D.2d 426, 568 N.Y.S.2d 29, 34 (App. Div. 1991) ("[D]ivision of the marital property on a 50-50 basis . . . equitably balances" the wife's "contributions to the marriage as homemaker and mother and her labors which significantly contributed to the appreciation in value of the [marital home]" and "the husband's financial contribution to the acquisition of marital assets."). For these reasons, Mr. Drayton's argument on this issue is unpersuasive and specious.

---

[3] During the trial, Ms. Drayton testified that she was working as a part-time associate at the service desk of the local hardware store. There is no indication, however, of when she commenced such part-time work.

■ Additionally, the fact that Mr. Drayton was the owner of record of the marital home and the deed holder for the land on which that home was built has little bearing on an equitable distribution between the parties. First, as we explained above, regardless of Mr. Drayton's status as a title holder, when the couple began residing in the home it was transmuted into the marital homestead, in which Ms. Drayton rightly acquired an equitable interest. Moreover, "[c]onsideration of each party's contribution to the acquisition of the property necessarily requires the court to delve beyond the form of ownership and title and inquire into the specific facts and circumstances of the parties' marriage and the circumstances under which the property was acquired." *Armstrong*, 266 F. Supp. 2d at 395. Here, the trial court awarded Mr. Drayton "the rounded figure of his premarriage investment in the property," in addition to a 50% interest in the proceeds from the home sale. The court's ruling clearly evidences a proper consideration of the facts underlying the acquirement of the marital home.

We also deem Mr. Drayton's title argument particularly disingenuous and convenient, since Ms. Drayton's uncontroverted testimony was that when she asked Mr. Drayton to place her name on the deed for the property, he told her it wasn't necessary because she was his wife. Accordingly, we summarily reject Mr. Drayton's argument that his status as the deed holder should have been a determinative factor in the court's equitable distribution of the property, and hold that the Superior Court did not abuse its discretion in its distribution of interest in the home.

### C. The 2009 Ford Escape vehicle was not a gift from Mr. Drayton to Ms. Drayton.

The trial court ruled that the passing of the keys to the vehicle while at the car dealership as well as the fact that Ms. Drayton had sole and uninterrupted use of the Ford Escape since the transfer proved that the vehicle was a gift. The court then awarded Ms. Drayton sole ownership and possession of the Ford Escape and ordered Mr. Drayton to complete the necessary paperwork to transfer the title to the vehicle to Ms. Drayton no later than January 1, 2016. Mr. Drayton claims that the trial court ignored relevant evidence, or the lack thereof, in finding that the Ford Escape was a gift from him to Ms. Drayton. We agree.

■ Although Virgin Islands law defines marital property as all real and personal property acquired by either spouse subsequent to the

342

marriage, property acquired by gift is not classified as a marital asset. 16 V.I.C § 109(a)(7)(A). And, there is no indication from the statutory language that interspousal gifts are treated any differently. *See King v. Burwell*, 576 U.S. ___, 135 S. Ct. 2480, 2489, 192 L. Ed. 2d 483 (2015) ("If the statutory language is plain, we must enforce it according to its terms.") (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010)). Considering the Superior Court's determination that the vehicle was a gift to Ms. Drayton, it appears that the trial court awarded Ms. Drayton sole ownership and possession of this vehicle because it considered the vehicle Ms. Drayton's gifted, non-marital property, in which Mr. Drayton had absolutely no interest.

For this Court to review the Superior Court's assessment that a gift was effectuated for purposes of section 109(a), we must "turn to the traditional rules of statutory construction to determine the meaning of the [word 'gift']" in that same statutory provision. *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 545 (V.I. 2015). The Virgin Islands Code provides that where the Legislature has not defined the meaning of a term by statute, " '[w]ords and phrases' " are to " 'be construed according to the common and approved usage of the English language' unless the word has 'acquired a peculiar and appropriate meaning in the law.' " *Id.* (quoting 1 V.I.C. § 42) (alteration in original).

 Thus, to establish that a gift was effectuated, a donee must prove: (1) donative intent on the part of the donor; (2) actual or constructive delivery; and (3) acceptance. *Widom v. Mittman*, 39 A.D.3d 374, 833 N.Y.S.2d 502, 502-03 (App. Div. 2007) ("The elements necessary for an effective gift are: (1) an intent on the part of the donor to make a present transfer; (2) delivery of the gift, either actual or constructive, to the donee; and (3) acceptance by the donee."); *see Cannuni ex rel. Cannuni v. Schweiker*, 740 F.2d 260, 265 (3d Cir. 1984); *see also Chestnut v. Goodman*, 59 V.I. 467, 473 (V.I. 2013) (determining that in the context of real estate, the elements of an effective gift are (1) a donative intent on the part of the grantor at the time the deed was executed, and (2) an actual or constructive delivery of the deed to the grantee); BLACK'S LAW DICTIONARY 758 (9th ed. 2009) (defining an "*inter-vivos* gift" as "a gift of personal property made during the donor's lifetime and delivered to the donee with the intention of irrevocably surrendering control over the property"). To substantiate donative intent, the donee must

demonstrate a "clear, unmistakable, and unequivocal intention on the part of a donor to make a gift of his or her property." *Chestnut*, 59 V.I. at 473-74 (citing 38 AM. JUR. 2D *Gifts* § 15). The donor's intention may be expressed in words, actions, or a combination thereof and may be inferred from the surrounding facts and circumstances. *Id.* at 474.

The appellate court in *In re Marriage of Frick*, 181 Cal. App. 3d 997, 226 Cal. Rptr. 766 (1986) characterized the intent of the donor spouse as "the all-important and controlling question." *Id.* at 776. In that case, the former wife also had exclusive use of an automobile, commencing at the time her former husband purchased it. *Id.* However, the husband retained title to the vehicle in the name of his corporation and never transferred title to his wife. *Id.* These facts, as well as the husband's repeated testimony that the vehicle was not a gift, persuaded the court that there was insufficient evidence to establish donative intent. *Id.* Conversely, in *Clark v. Clark*, 782 S.W.2d 56, 62 (Ky. Ct. App. 1990), the court upheld the lower court's grant of a Cadillac vehicle to the donee spouse as non-marital property, finding donative intent where the donor spouse plainly indicated that the car had been a Christmas gift to his wife while she was pregnant with the parties' daughter. *Id.* at 62-63.

 The requisite donative intent for a gift to be effectuated is conspicuously absent in this case. First, Mr. Drayton testified that he never stated to Ms. Drayton that the vehicle was a gift. More compellingly, however, Mr. Drayton not only purchased the Ford Escape in his name but Ms. Drayton's testimony was that he outright refused her request for him to execute a title transfer. These facts cast substantial doubt on Ms. Drayton's assertion that the vehicle was gifted non-marital property. *See In re Marriage of Frick*, 226 Cal. Rptr. at 776; *Tidball v. Tidball*, 93 A.D.2d 954, 463 N.Y.S.2d 287, 289 (App. Div. 1983) ("Defendant's retention of title and insurance on the car, all with the full knowledge of plaintiff, precludes finding that she was the beneficiary of an unequivocal gift . . . . [T]hese vehicles should have been treated in the same fashion as the other property."); *Heineman v. Heineman*, 768 S.W.2d 130, 139 (Mo. Ct. App. 1989) ("There was no evidence of any completed gift of the automobile by husband to wife. . . . A gift is shown by a transfer of title and possession to the donee, including the relinquishment by the donor of all ownership and control.").

Mr. Drayton's supposed statement to Ms. Drayton, "it's your vehicle," and Ms. Drayton's exclusive use of the Ford Escape, without more,

simply do not constitute a clear, unmistakable and unequivocal intention on Mr. Drayton's part to make a unilateral gift to Ms. Drayton. And, of course, Ms. Drayton's subjective belief that the vehicle was a gift is of no consequence. Indeed, the evidence more appropriately suggests that Mr. Drayton, while maintaining formal ownership of the car and making payments on the loan for the vehicle until it was paid in full, allowed his former wife exclusive use of the car to fulfill familial obligations such as transporting the children to and from school, grocery shopping and attending doctors' appointments. Therefore, we find that the Superior Court erred in its classification of the 2009 Ford Escape as a gift to Ms. Drayton. As defined by 16 V.I.C § 109(a)(7), this vehicle constituted personal property acquired by a spouse subsequent to the marriage, rendering it a marital asset. Accordingly, this case must be remanded for the equitable distribution of the 2009 Ford Escape between Mr. Drayton and Ms. Drayton.

### D. The Superior Court did not err in its division of the parties' personal and marital property.

First, the Superior Court found that there was no evidence regarding the ownership of the Antigua home, its value, or how much proceeds were recovered from the sale, if any. The court also found that, with the exception of a bedroom set which Ms. Drayton disposed of, and for which the court awarded Mr. Drayton $600, Mr. Drayton failed to prove that Ms. Drayton was responsible for the loss of his personal property allegedly missing from the marital home.

██ On appeal, findings of fact are reviewed under a clearly erroneous standard of review. Accordingly, this Court must accept the trial court's factual determinations unless they are completely devoid of minimum evidentiary support displaying some hue of credibility, or bear no rational relationship to the supportive evidentiary data. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Given the evidence in the trial record, or rather, the lack thereof, the court's determinations regarding the Antigua home and Mr. Drayton's personal property are not clearly erroneous.

Mr. Drayton's argument regarding the Antigua home is largely a reframing of his earlier claim that Ms. Drayton did not contribute financially to the marital homestead. Insofar as we have already discussed this contention in the context of the equitable distribution of the marital

homestead, we need not address it here. While Mr. Drayton also seems to argue that the available proceeds from the sale of the Antigua home were subject to distribution in the divorce, he presented no evidence verifying that the home was in fact marital property, as prescribed by 16 V.I.C. § 109(a)(7). Concededly, there was extensive direct and cross-examination regarding when the home was sold and the selling price, but there was neither testimonial nor documentary evidence establishing that Ms. Drayton actually acquired the home after the parties married in 2000. Moreover, a review of the trial record reveals no evidence of the manner in which Ms. Drayton acquired the home. Thus, even assuming that Ms. Drayton attained ownership of the home subsequent to the marriage — an assumption unsupported by the trial record — there is no way of knowing if she acquired it through a testamentary transfer, by descent, or any other manner exempting it from the marital estate. Given that there was no evidentiary basis for determining that the Antigua home was marital property, the Superior Court's finding on this issue was proper.

Similarly, there was insufficient evidence that Ms. Drayton was responsible for the loss of Mr. Drayton's furniture, tools and construction supplies and materials which were missing from an outdoor shed at the marital home and from a bedroom he once occupied. As discussed, Ms. Drayton did admit that she disposed of her former husband's bed set. Mr. Drayton, in turn, informed the court that the cost of that set was $600, and the court ordered Ms. Drayton to reimburse Mr. Drayton this amount. But, just as Mr. Drayton failed to do before the trial court, he likewise does not substantiate on appeal how Ms. Drayton was liable for the loss of the other property. Therefore, there exist no grounds to disturb the trial court's factual finding on this issue.

### E. The Superior Court erred in failing to equitably distribute the parties' marital debt.

Although 16 V.I.C. § 109(a)(7) does not specify that the Superior Court has jurisdiction to distribute debts incurred for the benefit of both spouses during a marriage, it is broadly recognized that such debt constitutes "marital debt" that is subject to equitable distribution during divorce proceedings. *See, e.g., Carnes v. Carnes,* 82 So. 3d 704, 711 (Ala. Civ. App. 2011); *In re Marriage of Flower,* 223 Ariz. 531, 225 P.3d 588, 592 (Ct. App. 2010); *In re Marriage of Peterson,* 243 Cal. App. 4th 923, 197 Cal. Rptr. 3d 588, 596-97 (2016); *In re Marriage of Nevarez,* 170 P.3d

808, 814 (Colo. App. 2007); *Lynn v. Lynn*, 130 Conn. App. 319, 23 A.3d 771, 777 (2011); *Heiny v. Heiny*, 113 So. 3d 897, 901 (Fla. Dist. Ct. App. 2013); *Moore v. Moore*, 286 Ga. 505, 690 S.E.2d 166, 167 (2010); *In re Marriage of Davis*, 292 Ill. App. 3d 802, 686 N.E.2d 395, 399, 226 Ill. Dec. 765 (1997); *Chamberlain v. Chamberlain*, 615 N.W.2d 405, 414 (Minn. Ct. App. 2000); *Finley-Swanson v. Swanson*, 20 Neb. Ct. App. 316, 823 N.W.2d 697, 706 (2012); *DiFiore v. DiFiore*, 87 A.D.3d 971, 974-75, 933 N.Y.S.2d 39 (App. Div. 2011); *Warren v. Warren*, 773 S.E.2d 135, 137 (N.C. Ct. App. 2015); *Calkins v. Calkins*, 2016-Ohio-1297, ¶ 23, 62 N.E.3d 686 (2016); *In re Marriage of Hostetler*, 269 Ore. App. 312, 344 P.3d 126, 134-35 (2015); *Wooten v. Wooten*, 364 S.C. 532, 615 S.E.2d 98, 105 (2005); *Coggin v. Coggin*, 738 S.W.2d 375, 377 (Tex. App. 1987); *Sinclair v. Sinclair*, 718 P.2d 396, 398 (Utah 1986). Therefore, it is axiomatic that the same rules of fairness and equity which apply to the equitable distribution of marital property also apply to the equitable division of marital debts. *Hardy v. Hardy*, 311 S.C. 433, 429 S.E.2d 811, 814 (Ct. App. 1993).

Although the Superior Court correctly recognized that marital debt is subject to equitable distribution between former spouses, it found that the creditors' letters presented at trial (which are absent from the record before this Court) were generalized and dated after the parties separated in 2013. Ultimately, the court decided that Mr. Drayton had not shown the precise nature of the debt claimed, and specifically, how the money was utilized solely for Ms. Drayton's benefit and not for the household, as she testified. Again, the trial court's findings of fact are reviewed for clear error. *Martin*, 58 V.I. at 624-25.

 The trial court's determination that the debt was incurred for the support and maintenance of the family is precisely why it was subject to equitable allocation. While we agree with the Superior Court that Mr. Drayton did not present evidence as to the specific components of the debt, Ms. Drayton repeatedly testified that the credit cards were used for household purchases and expenses, including food, bills and clothing for the children and herself. Ms. Drayton further explained that for one credit card, Mr. Drayton was the primary cardholder and she was the secondary cardholder. She explicitly testified, at least twice, that both she and Mr. Drayton incurred the debts. Thus, while the trial court's finding that the credit card debt constitutes marital debt is supported by evidence in

the record, and is clearly not erroneous, the court's result does not accord with this factual finding.

The trial court erred in failing to attribute any portion of the credit card debt to Ms. Drayton or award Mr. Drayton a monetary amount for purposes of liquidating the parties' credit card debt. On remand, therefore, the trial court must equitably apportion the marital debt between the parties, and may exercise broad discretion in determining the manner in which the debt should be divided. *See Wright v. Wright*, 1 S.W.3d 52, 60 (Mo. Ct. App. 1999).

## IV. CONCLUSION

The Superior Court properly exercised its discretion in the equitable distribution of the marital homestead, and did not commit error in its findings regarding Mr. Drayton's allegedly missing property and the home sale in Antigua. However, the court erred in finding that the 2009 Ford Escape purchased by Mr. Drayton was a gift to Ms. Drayton, and also erred in its failure to equitably distribute the marital debt. Accordingly, this case is remanded to the Superior Court for further proceedings in compliance with this opinion.